Filed 7/21/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| STEVEN WALTERS et al., | 2d Civil No. B258638 |
| Plaintiffs and Appellants, | (Super. Ct. No. BS144965) |
| | (Los Angeles County) |
| v. | |
| CITY OF REDONDO BEACH et al., | |
| Defendants and Respondents; | |
| REDONDO AUTO SPA et al., | |
| Real Parties in Interest and Respondents. | |

Respondent City of Redondo Beach (City) approved a conditional use permit (CUP) for construction of a combination car wash and coffee shop on a vacant lot adjacent to homes owned by appellants Steven Walters, Mark Kleiman, Rick Son, Krishna Gorripati and John Moore. In issuing the permit, the City found the project was categorically exempt from the requirements of the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.; CEQA)[1] because it involves the development of "new, small facilities or structures [and] installation of small new equipment and facilities in small structures." (Guidelines, § 15303.)

---

[1] All further statutory references are to the Public Resources Code, unless otherwise indicated. The CEQA implementing guidelines appear at California Code of Regulations, title 14, section 15000 et seq., and will be referred to as the "Guidelines."

Appellants filed a petition for writ of mandate challenging the City's decision. The trial court denied the petition, agreeing with the City that the project is categorically exempt from CEQA under Guidelines section 15303, subdivision (c) and that no exception to the exemption applies. We affirm.

FACTS AND PROCEDURAL BACKGROUND

Respondents and real parties in interest Redondo Auto Spa and Chris McKenna (collectively "Auto Spa") propose to build a full-service car wash and small coffee shop on a 25,000 square-foot lot at the northwest corner of Torrance Boulevard and South Irena Avenue in Redondo Beach. The property is located within a commercial (C-3) zone. The structure will consist of a 90-foot car wash tunnel and attached coffee shop that together will total 4,080 square feet. The remainder of the site will include 17 parking spaces for employees and coffee shop patrons, an area for drying cars, landscaping and a water feature. Entry to the car wash is from the residential street, just beyond the corner of the major street.

In 1965, the City approved a CUP for a car wash and snack bar at the same location. That car wash, which occupied 5,138 square feet of the parcel, operated until approximately June 2001. The property fell into disrepair. About five years later, appellants' homes on the abutting property lines were constructed. In 2012, the property was found to be a blight on the area and the City prosecuted the owner for nuisance and other charges. Auto Spa responded by demolishing the remaining structure and proposing to rebuild the car wash as an "express wash" model, in which patrons would vacuum their own cars and drive through the car wash tunnel. The City's Planning Commission (Commission) did not approve the plan. Among other things, it determined that the proposed use would have an adverse impact on abutting properties and that the site was not adequate in size and shape to accommodate the express wash project. Rather than appeal that decision, Auto Spa proposed a self-described "high end," full-service car wash and coffee shop.

The Commission granted a CUP for the full-service car wash and found that it was categorically exempt from CEQA under Guidelines section 15303, subdivision (c). The notice of exemption states that "[t]he project consists of the construction of a new car wash facility and coffee shop of 4,080-square feet in size on commercially zoned property. As such, it is consistent with the classes of projects described in CEQA Guidelines Section 15303(c) that states, in part, that commercial buildings not exceeding 10,000 square feet in floor area on sites zoned for such use if not involving the use of significant amounts of hazardous substances where all necessary public services and facilities are available and the surrounding area is not environmentally sensitive are considered exempt from further CEQA review. No potentially significant environmental impacts will result from the project."

The Commission added certain restrictions to the project, requiring that the equipment not exceed the Redondo Beach Municipal Code (Municipal Code) noise limit, that no detailing equipment be used that is audible or discernable at the property line from the other on-site equipment, and that operating hours be limited. The Commission further required that the number of vehicles washed be limited to 20 vehicles per hour and to no more than 200 vehicles per day (referred to as Condition 24). Coffee shop hours were set at 7:00 a.m. to 8:00 p.m. seven days a week. Walters and Kleiman appealed the decision to the City Council.

Auto Spa provided a traffic study, conducted by Gibson Transportation Consulting (Gibson), which concluded that the proposed car wash would not change the level of service at the intersection from its present "A" status, even at peak operating times. It also commissioned a noise study by Davy & Associates (Davy), which determined that the only significant noise source would be the blower/dryer systems inside the car wash tunnel. Davy concluded that noise would largely be contained by the design and materials to be used in constructing the facility.

Before the hearing on the appeal, Auto Spa requested removal of Condition 24. It claimed that 200 cars per day would not be profitable for the car wash. The City

Council approved the project subject to certain conditions, including compliance with the City's noise ordinance (Condition 20), a vehicle limit of 10,000 cars per month and limitations on the car wash's operating hours.[2] Condition 20 requires that compliance with the noise standards be tested and documented prior to the final inspection and opening of the car wash.

With these and other conditions in place, the City Council determined (1) the building site is adequate in size to accommodate the proposed use; (2) the proposed use has adequate street access and will not have a significant impact on traffic; (3) the proposed use will have no adverse effect on abutting properties; (4) the noise that will be generated by the car wash blowers and vacuum drops does not exceed the permitted interior and exterior limits; (5) the project is exempt from CEQA under Guidelines section 15303, subdivision (c); and (6) the project will not have a significant effect on the environment.

Appellants filed a petition for writ of mandate challenging the CEQA exemption and the City's issuance of a CUP. After briefing and a hearing, the trial court denied the writ petition, concluding that the project is categorically exempt under Guidelines section 15303, subdivision (c), and that the CUP was properly issued. This appeal followed.[3]

DISCUSSION

A. CEQA Overview

"CEQA and its implementing administrative regulations [Guidelines] . . . establish a three-tier process to ensure that public agencies inform their decisions with environmental considerations. [Citation.] The first tier is jurisdictional, requiring that an

---

[2] The permitted hours of operation for the car wash are from 8:00 a.m. to 6:00 p.m. during daylight savings time and 8:00 a.m. to 5:00 p.m. during standard time, except on Sundays, where the hours are from 9:00 a.m. to 4:00 p.m.

[3] With our permission, Building Better Redondo, Inc. (BBR) filed an amicus curiae brief supporting appellants' position. We have considered its arguments in addition to those raised by the parties.

4

agency conduct a preliminary review to determine whether an activity is subject to CEQA." (*Muzzy Ranch Co. v. Solano County Airport Land Use Com.* (2007) 41 Cal.4th 372, 379-380, fn. omitted (*Muzzy Ranch*).) "CEQA applies if the activity is a 'project' under the statutory definition, unless the project is exempt. [Citations.]" (*San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.* (2006) 139 Cal.App.4th 1356, 1373.)

"The second tier concerns exemptions from CEQA review," which include "categorical exemptions or 'classes of projects' that the . . . agency has determined to be exempt per se because they do not have a significant effect on the environment. [¶] . . . [¶] If a public agency properly finds that a project is exempt from CEQA, no further environmental review is necessary. [Citation.] The agency need only prepare and file a notice of exemption [citations], citing the relevant statute or section of the CEQA Guidelines and including a brief statement of reasons to support the finding of exemption [citation]." (*Muzzy Ranch*, *supra*, 41 Cal.4th at p. 380.) The "third tier applies if the agency determines substantial evidence exists that an aspect of the project may cause a significant effect on the environment." (*Id.* at p. 381.)

Here, it is undisputed that the proposed car wash qualifies as a "project" under CEQA. The issues on appeal concern the second tier of the CEQA analysis, i.e., whether the City erred in finding that the car wash project is categorically exempt from CEQA and that there are no unusual circumstances creating a reasonable possibility the activity will have a significant effect on the environment. (See Guidelines, §§ 15303, subd. (c), 15300.2, subd. (c).)

"In considering a petition for writ of mandate in a CEQA case, '[o]ur task on appeal is "the same as the trial court's." [Citation.] Thus, we conduct our review independent of the trial court's findings.' [Citation.] Accordingly, we examine the City's decision, not the trial court's." (*Banker's Hill, Hillcrest, Park West Community Preservation Group v. City of San Diego* (2006) 139 Cal.App.4th 249, 257.)

5

*B. Application of Categorical Exemption*

The City determined that the car wash project fell within Class 3 of the CEQA categorical exemptions. Appellants argue this determination was incorrect as a matter of law. To the extent this argument "turns only on an interpretation of the language of the Guidelines or the scope of a particular CEQA exemption, this presents 'a question of law subject to de novo review by this court.'" (*Save Our Carmel River v. Monterey Peninsula Water Management Dist.* (2006) 141 Cal.App.4th 677, 693.) But "[w]here the record contains evidence bearing on the question whether the project qualifies for the exemption, such as reports or other information submitted in connection with the project, and the agency makes factual determinations as to whether the project fits within an exemption category, we determine whether the record contains substantial evidence to support the agency's decision." (*Id.* at p. 694.)

The relevant Class 3 exemption involves "[1] construction and location of limited numbers of new, small facilities or structures" and "[2] installation of small new equipment and facilities in small structures." (Guidelines, § 15303.) This exemption typically applies "when the project consists of a small construction project and the utility and electrical work necessary to service that project." (*Voices for Rural Living v. El Dorado Irrigation Dist.* (2012) 209 Cal.App.4th 1096, 1109 (*Voices*).) "Examples of this exemption include *but are not limited to*: . . . [¶] (c) A store, motel, office, restaurant or similar structure not involving the use of significant amounts of hazardous substances, and not exceeding 2500 square feet in floor area. In urbanized areas, the exemption also applies to up to four such commercial buildings not exceeding 10,000 square feet in floor area on sites zoned for such use if not involving the use of significant amounts of hazardous substances where all public services and facilities are available and the surrounding area is not environmentally sensitive." (Guidelines, § 15303, subd. (c), italics added.)

The parties do not dispute that the proposed car wash project is located in an urbanized area. Their dispute centers on whether a car wash generally fits within the

6

definition of commercial buildings in Guidelines section 15303, subdivision (c), and whether the car wash at issue here, at 4,080 square feet, is within that section's size restrictions. Appellants acknowledge this Guideline exempts a "store, motel, office, restaurant or similar structure," but contend there is nothing in the exemption that would indicate it was intended to cover the installation of industrial equipment. They argue that the types of equipment installed at a car wash, such as blowers, vacuums, air nozzles and waste treatment, are not anticipated by Guidelines section 15303, subdivision (c). We disagree.

First, the Guideline itself says it is not limited to the listed examples of a store, motel, office or restaurant. It also includes "similar structure[s]." (Guidelines, § 15303, subd. (c).) Car washes are similar to stores, motels, offices and restaurants in that they are commercial businesses that serve consumers, require the parking of consumers' vehicles, contain equipment and often are located in or near residential areas. Moreover, the proposed car wash includes a coffee shop, which qualifies as a restaurant. Appellants cite no case authority suggesting that a car wash and coffee shop combination cannot qualify for the exemption under section 15303, subdivision (c).

In addition, we reject appellants' contention that the equipment intended to be used at a car wash is substantially different from the types of equipment associated with a store, motel, office or restaurant that is up to 10,000 square feet in size. As Auto Spa points out, these types of buildings typically have centralized heating, ventilation and air conditioning plants with chillers, cooling towers, commercial laundry facilities and commercial kitchens with ventilation systems.

Nor are we persuaded by appellants' argument that Guidelines section 15303, subdivision (c) does not apply to a *single* commercial building in excess of 2,500 square feet. This argument was rejected by *Fairbank v. City of Mill Valley* (1999) 75 Cal.App.4th 1243 (*Fairbank*), which held "[t]he most plausible reading of Guidelines section 15303(c), as amended in October 1998, is that a commercial project to be built in an urbanized area may be found to be exempt if it involves the construction of one, two,

7

three, or four commercial buildings on a parcel zoned for such use, so long as the total floor area of the building(s) does not exceed 10,000 square feet. [I]t does not make sense to interpret the exemption as applicable to the construction of *four* 2,500-square-foot buildings on a given parcel, but not to *one* building of 10,000 square feet or less on the same parcel." (*Id.* at p. 1258.)

There is no dispute that the proposed car wash and coffee shop is a commercial structure of less than 10,000 square feet that is to be built in an urbanized area zoned for commercial use. There also is no dispute that "all necessary public services and facilities are available" and that the surrounding area is not considered "environmentally sensitive." (Guidelines, § 15303, subd. (c).) The City properly determined, therefore, that the car wash and coffee shop project satisfies the categorical exemption requirements of Guidelines section 15303, subdivision (c).

Appellants argue that even if the exemption could apply to a car wash and coffee shop in some instances, it does not apply here because the proposed project will be utilizing hazardous chemicals. While it is true that the exemption in Guidelines section 15303, subdivision (c) applies only to commercial buildings that do "not involv[e] the use of significant amounts of hazardous substances," appellants have not offered any evidence suggesting that the soaps or detergents to be used at the proposed car wash are hazardous, or that any significant amount of hazardous substances will be used. To the contrary, they offer documents that state that the soaps are biodegradable and are "verified nonhazardous per [the Occupational Safety and Health Administration]." Appellants' speculation that the car wash operation might include hazardous substances is not supported by the administrative record.

### C. Unusual Circumstances Exception to Categorical Exemption

Appellants contend that even if Guidelines section 15303, subdivision (c) does apply to the proposed car wash and coffee shop, several factors inherent in the project preclude the use of a categorical exemption because "there is a reasonable possibility that the activity will have a significant effect on the environment due to

8

unusual circumstances." (Guidelines, § 15300.2, subd. (c).) As we shall explain, the record does not support application of this "unusual circumstances" exception to the exemption.

### 1. Analytical Framework and Standards of Review

In assessing whether the unusual circumstances exception applies, we engage in two alternative analyses, as delineated by our Supreme Court in *Berkeley Hillside Preservation v. City of Berkeley* (2015) 60 Cal.4th 1086, 1105 (*Berkeley Hillside*). "In the first alternative, . . . a challenger must prove both unusual circumstances and a significant environmental effect that is due to those circumstances. In this method of proof, the unusual circumstances relate to some feature of the project that distinguishes the project from other features in the exempt class." (*Ibid*.) "Once an unusual circumstance is proved under this method, then the 'party need only show a *reasonable possibility* of a significant effect due to that unusual circumstance.'" (*Citizens for Environmental Responsibility v. State ex rel. 14th Dist. Ag. Assn.* (2015) 242 Cal.App.4th 555, 574 (*Citizens*).)[4]

Whether the project presents unusual circumstances under this alternative is a factual inquiry subject to the traditional substantial evidence standard of review. (*Berkeley Hillside*, *supra*, 60 Cal.4th at p. 1114.) This standard requires that we "resolv[e] all evidentiary conflicts in the agency's favor and indulg[e] in all legitimate and reasonable inferences to uphold the agency's finding." (*Citizens*, *supra*, 242 Cal.App.4th at p. 575.)

If unusual circumstances are found under this first alternative, "agencies . . . apply the fair argument standard in determining whether 'there is a reasonable possibility of a significant effect on the environment due to unusual circumstances.'" (*Berkeley Hillside*, *supra*, 60 Cal.4th at p. 1115, citing Guidelines, § 153002, subd. (c).)

---

[4] At the time of briefing in this appeal, *Citizens* had not been decided. At our request, the parties provided supplemental briefing discussing the impact of that case on the standard of review and other issues pending before us.

9

Under this standard, "'an agency is merely supposed to look to see if the record shows substantial evidence of a fair argument that there may be a significant effect. [Citations.] In other words, the agency is not to weigh the evidence to come to its own conclusion about whether there will be a significant effect. It is merely supposed to inquire, as a matter of law, whether the record reveals a fair argument. . . .'" (*Id.* at p. 1104, italics omitted.)

In the second alternative under *Berkeley Hillside*, a challenger "may establish an unusual circumstance with evidence that the project *will have* a significant environmental effect." (*Berkeley Hillside, supra,* 60 Cal.4th at p. 1105, italics added.) "When it is shown 'that a project otherwise covered by a categorical exemption will have a significant environmental effect, it necessarily follows that the project presents unusual circumstances.'" (*Id.* at pp. 1105-1106, italics omitted.) "But a challenger must establish more than just a fair argument that the project will have a significant environmental effect. [Citation.] A party challenging the exemption, must show that the project *will have* a significant environmental impact." (*Citizens*, *supra*, 242 Cal.App.4th at p. 576.) "In other words, a showing by substantial evidence that a project *will have* a significant effect on the environment satisfies both prongs of the unusual circumstances exception under the second method of establishing the exception." (*Ibid.*)

### 2. First Alternative --
### *Features of the Project as Unusual Circumstances*

The Guidelines do not define "unusual circumstances." (*Voices*, *supra*, 209 Cal.App.4th at p. 1109; *San Francisco Beautiful v. City and County of San Francisco* (2014) 226 Cal.App.4th 1012, 1023.) *Berkeley Hillside* clarified that a party can show an unusual circumstance by demonstrating that the project has some characteristic or feature that distinguishes it from others in the exempt class, such as its size or location. (*Berkeley Hillside*, *supra*, 60 Cal.4th at p. 1105; *Citizens*, *supra*, 242 Cal.App.4th at p. 576.) But "[t]he presence of comparable facilities in the immediate area adequately supports [an] implied finding that there were no 'unusual circumstances' precluding a

10

categorical exemption." (*Bloom v. McGurk* (1994) 26 Cal.App.4th 1307, 1316 (*Bloom*); see *San Francisco Beautiful*, at p. 1025 ["There is no basis to conclude the addition of 726 additional utility cabinets would be 'unusual' in the context of the City's urban environment, which is already replete with facilities mounted on the public rights-of-way"]; *City of Pasadena v. State of California* (1993) 14 Cal.App.4th 810, 826-827 ["We conclude that the lease of the Walnut Street site for use as a parole office does not constitute an 'unusual circumstance' within the meaning of CEQA in light of the presence of the other custodial and criminal justice facilities in the immediate area"], disapproved on other grounds as stated in *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 570, fn. 2.)

As previously discussed, there is nothing particularly unusual about the proposed car wash and coffee shop. The evidence establishes that there are many other car washes in the surrounding area, including a car wash within a minute's drive from the project site, five car washes within two miles and 12 car washes within a 10-minute drive. Indeed, the site itself was a car wash and snack bar for nearly 40 years, strongly suggesting that the circumstances are not the least bit unusual.

Appellants contend that the presence of "large air blowers and other outdoor activities that are conducted outside of the 'structures' seven days a week" makes the car wash "unusual." As Auto Spa observes, however, the examples in the Guidelines are not qualitatively different from a car wash. Restaurants and stores generally are open seven days a week; indeed, fast food restaurants and convenience stores are often open 24 hours a day. Restaurants and stores routinely have outside activities such as sidewalk displays, outdoor seating for customers or drive-through windows. Motels are necessarily 24-hour operations with parking lots and perhaps pools or other outdoor recreation areas and related equipment.

The general effects of an operating business, such as noise, parking and traffic, cannot serve as unusual circumstances in and of themselves. In *Fairbank*, *supra*, 75 Cal.App.4th 1243, the trial court concluded there was nothing unusual about traffic

11

and parking problems relating to a 5,855 square-foot commercial retail/office building. The court explained that challengers to the project had to show some feature "that distinguishes it from any other small, run-of-the-mill commercial building or use. Otherwise, no project that satisfies the criteria set forth in Guidelines section 15303(c) could ever be found to be exempt. There is nothing about the proposed 5,855 square-foot retail/office building that sets it apart from any other small commercial structure to be built in an urbanized area, without the use of hazardous substances and without any showing of environmental sensitivity." (*Id.* at p. 1260; see also *Bloom*, *supra*, 26 Cal.App.4th at p. 1316 [area zoned for facility precluded finding use was unusual]; *Association for Protection etc. Values v. City of Ukiah* (1991) 2 Cal.App.4th 720, 734-736 [objections to a single family home based on height, view, privacy and water runoff are "normal and common considerations in the construction of a single family residence and are in no way due to 'unusual circumstances'"].)

Appellants cite *Lewis v. Seventeenth Dist. Agricultural Assn.* (1985) 165 Cal.App.3d 823, for the proposition that the proximity to residences is itself an unusual circumstance, arguing that the noise and dust generated by the stock-car racing track at issue there is similar to the issues presented by the car wash project here. But the unusual circumstances prong of the exception was neither disputed nor analyzed in *Lewis*. (*Citizens*, *supra*, 242 Cal.App.4th at p. 585 ["It does not appear that the unusual circumstances prong of the exception was a matter of active dispute in *Lewis* as there was substantive analysis only on the significant effect prong"].) "[C]ases are not authority for propositions not considered." (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388.) Moreover, it is axiomatic that a car race track is far more unusual next to a residential neighborhood than the continuation of a long-standing car wash on the corner of a busy intersection near residential properties. (See *Citizens*, at pp. 584-585.)

We conclude appellants have not identified substantial evidence supporting a finding of unusual circumstances based on the features of the car wash and coffee shop

project. To the contrary, we conclude the City's findings on this issue are supported by substantial evidence.[5]  (*Berkeley Hillside*, *supra*, 60 Cal.4th at p. 1114.)

### 3. Second Alternative --

### *Significant Effect on the Environment as an Unusual Circumstance*

The next question is whether appellants have established unusual circumstances under the alternative method of showing that the project *will have* a significant environmental effect.  As discussed above, the reason for this alternative method is that "evidence that the project *will* have a significant effect *does* tend to prove that some circumstance of the project is unusual."  (*Berkeley Hillside, supra,* 60 Cal.4th at p. 1105.)  "Thus, a challenger seeking to prove unusual circumstances based on an environmental effect must provide or identify substantial evidence indicating (1) the project will actually have an effect on the environment and (2) that effect will be significant."  (*Citizens*, *supra*, 242 Cal.App.4th at p. 589.)  "A significant effect on the environment" is "a substantial adverse change in the physical conditions which exist in the area affected by the proposed project."  (Guidelines, § 15002, subd. (g).)

As in *Citizens*, appellants' focus before the City and the trial court was not on whether the project actually will have a significant effect on the environment, but rather on whether there is a reasonable possibility that the project may have a significant environmental impact.  (See *Citizens*, *supra*, 242 Cal.App.4th at p. 589.)  Appellants claimed there is a fair argument that the car wash and coffee shop may have significant adverse noise and traffic effects in the area.  "However, the evidence they rely upon and their arguments fall well short of establishing that the . . . project *will* have a significant environmental effect on the [area]."  (*Ibid.*)

---

[5] Because we conclude appellants have not met their burden of showing unusual circumstances based on the features of the project, we need not address whether there is a *reasonable possibility* of a significant environmental impact as a result of unusual circumstances.  (*Citizens*, *supra*, 242 Cal.App.4th at p. 588, fn. 24 ["A negative answer as to the question of whether there are unusual circumstances means the exception [under the first alternative] does not apply"].)

*a. Noise*

Appellants contend their noise expert, Evro Wee Sit, demonstrated that the operation of the car wash would violate the City's interior and exterior noise limits at the abutting property line. This is not possible, however, because approval of the project is conditioned upon Auto Spa's adherence to the City's interior and exterior noise limits. Condition 20 states "the owner/operator shall be responsible to install and maintain all equipment on the property so as 'to reduce noise levels' to meet the standards stated in the City's Noise Ordinance, specifically that there shall be no noise that exceeds 65 dBA as measured at the north property line for a period of thirty (30) minutes or more per hour, and that there shall also be compliance with the interior noise standards as stated in Section 4-24.401 as measured for 5 minutes, unless the residents of the adjacent residences deny access to their units for the purpose of measuring the interior noise standards. *Compliance with these requirements shall be tested and documented prior to the final inspection and opening of the car wash operation.*" (Italics added.)

Appellants and BBR argue Condition 20 violates CEQA's fundamental rule that environmental impacts, if any, must be reviewed and mitigated before approval of the land use project. We are not persuaded. After considering the parties' expert evidence, the City found that "the noise generated by the car wash blowers and vacuum drops does not exceed the permitted interior and exterior limits," and that "the project will not have a significant effect on the environment, subject to the modifications of the design review and conditions of approval." Hence, the City concluded that the project, as approved, complies with the noise ordinance requirements, but took a "belt and suspenders" approach by requiring Auto Spa to prove that those requirements are satisfied. If Auto Spa fails to do so, it will not be permitted to operate until needed modifications are made. As the trial court observed, appellants' "argument that the City does not have the necessary measuring equipment at present to test compliance with its noise standards is interesting but remediable in any number of ways -- and not a reason to deny the CUP."

14

Furthermore, *Berkeley Hillside* clarified that "a finding of environmental impacts must be based on the proposed project as actually approved . . . ." (*Berkeley Hillside*, *supra*, 60 Cal.4th at p. 1119.) If the project cannot be built as approved, the applicant must apply for approval of a different project. (*Ibid.*) Auto Spa concedes, therefore, that if it cannot construct a car wash that complies with the interior and exterior noise ordinance, it will have to apply for and obtain approval for a different project.

Auto Spa further concedes that Condition 20 contains a typographical error in that it states "there shall be no noise that exceeds 65 dBA as measured at the north property line for a period of thirty (30) minutes or more per hour . . . ." The actual ordinance specifies a maximum limit of 60 dBA. Auto Spa judicially admits that it must satisfy the 60 dBA exterior noise limit reflected in the ordinance.

In sum, the City found that the project will operate within the noise limitations but, by imposing Condition 20, the City has ensured that any violation of the noise ordinance will be corrected before the car wash and coffee shop are permitted to operate. Condition 20 also requires AutoSpa to continue to "maintain all equipment on the property so as 'to reduce noise levels' to meet the standards stated in the City's Noise Ordinance." Given these assurances, appellants have not met their burden of showing that the noise generated by the project actually will have a significant environmental effect. (See *Citizens*, *supra*, 242 Cal.App.4th at p. 589.)

*b. Traffic*

Appellants assert that their traffic expert, Arthur Kassan, demonstrated that the proposed car wash and coffee shop would adversely impact local traffic and pose public safety concerns around the immediate area due to the small lot size, site congestion, traffic bottlenecks and other issues. This assertion is contradicted by appellants' expert (Gibson), which provided significant evidence that the intersection currently operates at level A, the highest level of service, and would continue to operate at that level even at peak operating times for the car wash and coffee shop. According to

15

the standards of the City's circulation element,[6] the car wash and coffee shop will not "significant[ly] impact" traffic in the area, will not require a new traffic signal at the intersection and will generate less traffic than alternate land uses. Indeed, Auto Spa's expert testified that "the City of Redondo Beach's criteria for a significant impact says that a project can't have a significant impact until the intersections are up and running at level [of] service C or worse. So we're at A, and we have no impact."

Appellants concede the project will not result in any significant impacts under the City's circulation element traffic significance thresholds. They focus instead on the internal efficiency of the project. They argue that the design of the car wash and coffee shop is inefficient and will cause backups within the project property. This argument not only is speculative, but it also is contradicted by Gibson's report and by the City's finding that any such backups could be avoided by managing the flow of cars through the car wash.

Appellants also cite no authority suggesting that parking issues or the movement of cars on the property may be considered "traffic" as defined by CEQA. The Guidelines and case law clarify that traffic impacts for CEQA purposes relate to the flow of vehicles in public spaces. (See *Parker Shattuck Neighbors v. Berkeley City Counsel* (2013) 222 Cal.App.4th 768, 782 ["In general, CEQA does not regulate environmental changes that do not affect the public at large"].) The movement of cars on the property affects only those persons on the property, not the general public.

At best, appellants point to evidence suggesting that the project possibly could have a periodic negative effect on traffic. This is insufficient to meet their burden of identifying evidence that the project actually *will have* a significant impact on the environment by causing "a substantial adverse change in the physical conditions which

---

[6] Trip generation rates for the project were created using rates derived from the Institute of Transportation Engineers Trip Generation manual (9th Edition), which contains an industry-standard methodology for calculating trip generation based upon the square footage of the proposed structure and its use. (See *City of Long Beach v. Los Angeles Unified School Dist.* (2009) 176 Cal.App.4th 889, 910.)

exist in the area." (Guidelines, § 15002, subd. (g); see *Citizens*, *supra*, 242 Cal.App.4th at p. 589.) As the trial court aptly summarized, "Gibson prepared a video that pictorially illustrated [its] conclusion that various traffic loads do not reduce the 'level of service' below [level of service] A, the highest level of service. It is clear that approval by the City Council of the change to a higher, monthly limit in August 2013 was motivated in significant part by the content of that video which was played at that meeting and which illustrated the capacity of the intersection, etc., to absorb at least the traffic level ultimately approved -- and still have a 'level of service' of the highest rating, 'A.' [¶] . . . Level of Service 'A' is the highest traffic category possible and there is not a fair argument that the traffic level will fall below that with the change adopted by the Council . . . ."

### 4. Conclusion

Since appellants have failed to establish unusual circumstances under either *Berkeley Hillside* alternative, the exception does not preclude application of the Class 3 categorical exemption for "new, small facilities or structures [and] installation of small new equipment and facilities in small structures." (Guidelines, § 15303.) We conclude the City properly determined the car wash and coffee shop project is categorically exempt under the CEQA Guidelines.

### D. Compliance with Municipal Code

Appellants argue that the City erred in issuing the CUP. They contend the City violated the Municipal Code in three respects. First, they argue that the lot has an inadequate size and shape to accommodate the car wash. This argument lacks merit given that the lot successfully accommodated a car wash and snack bar for decades. Indeed, the record reflects that the old car wash tunnel was in a similar location to the new tunnel.

Second, appellants argue that the noise will disrupt health, safety and welfare, particularly with respect to noise and traffic. As discussed above, the project, as

approved, requires strict compliance with the City's noise ordinance, and substantial evidence establishes that it will not significantly impact traffic flow in the area.

Finally, appellants contend that "all potential adverse impacts that may be created by a proposed project must be addressed, which may include additional light, glare, noise, vibrations, odors, air or water pollution, traffic, parking, and other potentially undesirable impacts." The record reflects that the City did address these impacts. It expressly found that "[t]he design of the project considers the impact and needs of the user in respect to circulation, parking, traffic, utilities, public services, noise and odor, privacy, private and common open spaces, trash collection, security and crime deterrence, energy consumption, physical barriers, and other design concerns." Appellants offer no reliable authority or legal support demonstrating that the City's findings were not supported by substantial evidence or that they should be reversed. (See *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1078.)

DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal. CERTIFIED FOR PUBLICATION.

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

18

Allan J. Goodman, Judge

Superior Court County of Los Angeles
_____

Buchalter Nemer PC, and Robert M. Dato, for Plaintiffs and Appellants.

The Sohagi Law Group, PLC, Margaret M. Sohagi, and R. Tyson Sohagi, for Defendants and Respondents City of Redondo Beach et al.

Tucker Ellis LLP, Carmen A. Trutanich, Matthew I. Kaplan, and Rebecca A. Lefler, for Real Parties in Interest and Respondents Redondo Auto Spa et al.

Brian P. Barrow, for Amicus Curiae Building a Better Redondo, Inc.