Filed 10/12/17; pub. order 10/13/17 (see end of opn.)
Reposting to include modification order (unmodified opinion attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PROTECT TELEGRAPH HILL,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>    Defendant and Respondent;<br><br>JEREMY RICKS et al.,<br><br>    Real Parties in Interest. | A148544<br><br>(City & County of San Francisco<br>Super. Ct. No. CPF-14-514060)<br><br>ORDER MODIFYING OPINION;<br>NO CHANGE IN JUDGMENT |

BY THE COURT:

It is ordered that the opinion filed herein on September 14, 2017, be modified as follows:

On page 2, in the first sentence of the third full paragraph under the "BACKGROUND" heading, the word "statutorily" is deleted and replaced by the word "categorically."

At page 4, section subheading 2.a, which precedes the first full paragraph and reads "The Statutory Exemptions," is modified to read "The Categorical Exemptions."

The petition for rehearing filed September 27, 2017, is denied. There is no change in the judgment.


Date:  OCT 12, 2017                                    McGuiness, P.J.            P.J.


1

Filed 9/14/17; pub. order 10/13/17 (see end of opn.) (unmodified version)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PROTECT TELEGRAPH HILL,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>  Defendant and Respondent. | A148544<br><br>(City & County of San Francisco<br>Super. Ct. No. CPF-14-514060) |

The City and County of San Francisco (the City) approved construction of a three-unit condominium project proposed by real parties in interest Jeremy Ricks, Tracy Kirkham and Joe Cooper on Telegraph Hill at 115 Telegraph Boulevard.  Appellant Protect Telegraph Hill argues that the approval was unlawful because an Environmental Impact Report (EIR) for the project should have been prepared under the California Environmental Quality Act (CEQA).[1]  We conclude no review was necessary under CEQA because the project was categorically exempt from review and no unusual circumstances exist to override the exemption on the basis the project will have a significant effect on the environment.  We also conclude the city permissibly approved a conditional use authorization for the project. The superior court's order denying a petition for writ of mandamus is affirmed.

---

[1] References to state statutes will be to the California Environmental Quality Act, Public Resources Code, sections 21000, et seq.

We also deny appellant's petition for writ of supersedeas filed August 18, 2017, in light of our determination on the merits.

BACKGROUND

The property proposed for development is a 7,517 square foot lot on the south side of Telegraph Hill bordering the Filbert Street steps. It is unimproved except for a small uninhabitable 1906 cottage in the rear of the property. At one time, the property had five buildings on it, but four of them were demolished in about 1997. The real parties in interest intend to restore and rehabilitate the existing cottage in addition to constructing the three unit building.

When completed there will be the approximately 1,000 square foot cottage and a three-story over basement building with three units ranging from approximately 3,700 to 4,200 square feet apiece. A new curb cut along Telegraph Boulevard will provide access to a 3,700 square foot basement with three off-street parking spaces. Sixty-eight feet along the front of the building will border the Filbert Street steps, and it is designed to appear as three separate single family homes with each just below the forty-foot height limit as they step down the hill with the natural topography.

In September 2014, the San Francisco Planning Department (the Department) determined the project was statutorily exempt from CEQA because it fell within classes of projects that were determined not to have significant effects on the environment. Under CEQA guidelines renovation and restoration of the small cottage was within the exemption for restoration or rehabilitation of deteriorated structures. (Cal. Code Regs., tit. 14, § 15301, subd. (d).) Construction of the new building was exempt as a residential structure totaling no more than four dwelling units. (Cal. Code Regs., tit. 14, § 15303, subd. (b).) The same month, the Planning Commission approved a conditional use authorization for the project with some conditions designed to address possible disruption caused by construction activities.

A neighborhood group appealed the Department's decision to exempt the project from environmental review and the Planning Commission's conditional use authorization to the San Francisco Board of Supervisors. The Board considered both appeals in

2

November 2014. The exemption from environmental review was approved on a seven to three vote with one abstention. The conditional use was approved by an eight to two vote with one abstention. Additional conditions were added to that approval to ameliorate disruptions caused by construction and to preserve landscaping along the Filbert steps.

Appellant challenged those approvals in a petition for writ of mandamus. It argued there was no evidence from which to conclude the project was exempt from CEQA; unusual circumstances and the imposition of mitigation measures made the categorical exemptions improper; the city failed to evaluate the entire project; there was no evidence to support the conditional use authorization; and the conditional use authorization was in conflict with the city planning code and general plan. The superior court denied the petition. This appeal is timely.

DISCUSSION

1. *Standards of Review*

Because the City was not required to hold a hearing to determine whether the CEQA exemptions apply in this case, our review is governed by section 21168.5. (*Berkeley Hillside Preservation v. City of Berkeley* (2015) 60 Cal.4th 1086, 1110 (*Berkeley Hillside*).) When we review "an agency's compliance with CEQA in the course of its legislative or quasi-legislative actions, the courts' inquiry 'shall extend only to whether there was a prejudicial abuse of discretion.' (Pub. Resources Code, § 21168.5.) Such an abuse is established 'if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence.' " (*Vineyard Area Citizens for Responsible Growth, Inc. v. City of Rancho Cordova* (2007) 40 Cal.4th 412, 426.) Even though this is an appeal of a trial court judgment, we review the agency's action not the trial court decision. We determine whether the administrative record is free of any legal error and contains substantial evidence to support the agency's factual findings. (*Id.* at p. 427.)

We similarly review a conditional use authorization for an abuse of discretion. An abuse is shown only where the agency has not proceeded in a manner required by law, its decision is unsupported by findings, or findings are not supported by substantial

3

evidence.  (*San Francisco Tomorrow v. City and County of San Francisco* (2014) 229 Cal.App.4th 498, 514.)  But the determination that a project comports with a city's general plan comes to us with a " 'strong presumption of regularity' " and we accord an agency great deference.  (*Ibid*.)

  2.  *California Environmental Quality Act (CEQA) Claims*

    a.  The Statutory Exemptions

CEQA "establishes a comprehensive scheme to provide long-term protection to the environment. It prescribes review procedures a public agency must follow before approving or carrying out certain projects.  For policy reasons, the Legislature has expressly exempted several categories of projects from review under CEQA.  [Citation.]  By statute, the Legislature has also directed the Secretary of the Natural Resources Agency (Secretary) to establish 'a list of classes of projects that have been determined not to have a significant effect on the environment and that shall be exempt from' CEQA."  (*Berkeley Hillside, supra*, 60 Cal.4th at p. 1092.)  Pursuant to that grant of authority, one class of exemptions is provided for alteration or repair of existing structures.  (Cal. Code Regs., tit. 14, § 15301.)  Another is provided for the construction or conversion of small structures.  (Cal. Code Regs., tit. 14, § 15303.)

In this case, the planning department concluded rehabilitation of the small cottage was within the exemption provided for alteration or repair of an existing structure because it involved "[r]estoration or rehabilitation of deteriorated or damaged structures," as described in Cal. Code Regs., tit. 14, § 15301 (d).  Construction of the new three-unit building was determined to be within the exemption provided for new construction as a "multi-family residential structure totaling no more than four dwelling units."  (Cal. Code Regs., tit. 14, § 15303 (b).)  Appellants make no claim that the proposed project is not encompassed within the plain language of both of these exemptions.  Nor do they appear to challenge the exemption for renovation of the existing cottage in any meaningful way.

Instead, appellants say granting the exemptions was unlawful because the Board of Supervisors imposed conditions on the project approval that were designed to mitigate the effects of the project during construction, and the fact that these measures were

4

imposed demonstrates that the project will harm the environment.  They also argue the exemptions were not proper because the project description was inadequate.  Finally, they argue the project is not exempt due to unusual circumstances.

b.  Conditions of Approval

In authorizing the conditional use for the project, both the Planning Commission and the Board of Supervisors required certain precautions to be taken during construction.  The Planning Commission imposed a number of conditions that relate to requirements that the project sponsor proceed with diligence and obey all laws. Appellants make no claim that these conditions have any bearing upon whether the project is exempt from CEQA.  But a number of conditions relate to pedestrian safety and possible disruption of traffic on Telegraph Hill during construction.[2]  The Board of Supervisors also imposed conditions pertaining to traffic and pedestrian safety.[3] According to appellants, these are not conditions of approval suitable for a use permit, but mitigation measures of significant environmental effects under CEQA.  Not so.

First of all, appellants conflate the city's consideration of the categorical exemptions from CEQA with the conditional use authorization.  The record reflects that

_____

[2] The Planning Commission's conditions are:  requiring preservation of two trees that border the property along the Filbert steps; moving the garage door back seven feet six inches from the property line to provide better visibility of pedestrian traffic to drivers exiting the garage; prohibiting construction parking in the Coit Tower parking lot; requiring a construction management plan and coordination of construction activities with the San Francisco Municipal Transportation Agency; and installation of a parabolic mirror to assist drivers exiting the garage.

[3] The Board's conditions are: construction of a pedestrian tunnel during construction to ensure the safety of pedestrians using the Filbert steps; positioning a flag person at the top of the Filbert steps at the entry point to the construction site; requiring construction trucks to stage off-site and not on Telegraph Hill Boulevard; prohibiting all construction related vehicles from using the Coit Tower parking lot; prohibiting construction activity between the hours of 5:00 p.m. and 7:00 a.m. until the building is fully enclosed; consultation with administration of Garfield Elementary School, local residents and the Planning Department regarding construction staging and traffic management; and ensuring no disruption of Muni service to Coit Tower due to construction.

these approvals were considered separately, and the conditions were not adopted out of concern that the project would have a significant environmental effect. The Planning Department approved the categorical exemptions without qualification. The Planning Commission did not revisit that decision or modify it. The Commission separately placed conditions on the conditional use authorization. Appellants separately appealed the department's CEQA exemption and the Commission's conditional use approval. The Board of Supervisors separately considered and voted on each appeal. Moreover, just before the Board's vote on the conditional use approval, the city attorney clarified for the Board that the conditions were "being done through the Board's authority on appeal of the conditional use authorization and are not to address significant impacts of the project under CEQA . . . . [¶] So the Board has additional authority under the CU process to impose conditions even though it has already determined that the impacts of the project will be less than significant." As the trial court observed, "Conditions on a project endorsed by a governmental agency do not constitute mitigation, where the record shows those conditions were not the basis for the agency's conclusion that the project qualified for a categorical exemption." (Citing *San Francisco Beautiful v. City and County of San Francisco* (2014) 226 Cal.App.4th 1012, 1033.) There is simply nothing in this record that demonstrates the Board was imposing the additional conditions in order to mitigate the project's significant environmental effects as opposed to taking precautions to address the ordinarily anticipated inconvenience and danger that arises when significant construction activity occurs in a congested urban environment like San Francisco's Telegraph Hill.

In many respects, appellant's argument is an *ipse dixit*. The projects fall within the four corners of the CEQA exemptions for construction of less than four units in an urban area and rehabilitation of an existing structure. There is no claim the exemptions are unsupported by substantial evidence. Rather, appellants argue the fact that requirements were imposed on real parties to take precautions for pedestrian and vehicle traffic during construction means the project will have a significant impact on the environment.

6

But appellants presented no substantial evidence to the Board that the project will have such a significant effect. There were expressions of concern, to be sure, but the record seems devoid of evidence of a significant environmental effect upon pedestrian rights of way, traffic or the operations at nearby Garfield School.[4] " '[S]ubstantial evidence includes fact, a reasonable assumption predicated upon fact, or expert opinion supported by fact.' . . . 'Substantial evidence is not argument, speculation, unsubstantiated opinion or narrative, [or] evidence that is clearly inaccurate or erroneous.' " (*Hines v. California Coastal Comm.* (2010) 186 Cal.App.4th 830, 856.)

There is no basis to conclude on this record that the conditions imposed on the conditional use authorization were disguised mitigation measures required by CEQA.

### c. The Project Description

Appellant argues it was important for city officials to consider all components of the proposed project in order to determine whether it warranted a categorical exemption from CEQA. Here, it argues the project description was insufficient for that purpose. But not only does the description of the project appear adequate for consideration of the CEQA exemptions and the conditional use authorization, the only authority appellant relies upon to support this argument is inapposite.

*County of Inyo v. City of Los Angeles* (1977) 71 Cal.App.3d 185, 193, considered the adequacy of a project description for an EIR, not the application of an exemption from CEQA. The CEQA guidelines contain fairly detailed specifications for a project description in an EIR. In addition to precise project boundaries, preferably in topographic form, they include the project's objectives, technical, economic, environmental characteristics, and a list of all permits or approvals required. (Cal. Code Regs., tit. 14, § 15124.) On the other hand, a notice of exemption is a determination that arises from a lead government agency's review for completeness of an application for a

[4] Additional facts supporting each of these considerations were set forth in the declarations filed in support of appellant's petition for writ of supersedeas. Because those declarations were not part of the record before the approving agencies, we considered them in support of appellant's request for a stay but not as evidence of a significant environmental effect.

7

permit or other entitlement, and encompasses a consideration whether the proposed activity is a project under CEQA. (Cal. Code Regs., tit. 14, § 15060.)

Here, the City's Administrative Code specifies the project description required to evaluate an application for a CEQA exemption. (S.F. Admin. Code, ch. 31, §§ 31.09, 31.10, subd. (a).) Section 31.10 provides: "Each environmental evaluation application or referral shall include a project description using as its base the environmental information form set forth as Appendix H of the CEQA Guidelines, which form shall be supplemented to require additional data and information applicable to a project's effects, including consistency with the environmental issues included in the Eight Priority Policies set forth in Section 101.1 of the Planning Code and incorporated into the General Plan; shadow impacts, including the analysis set forth in Planning Code Section 295; and such other data and information specific to the urban environment of San Francisco or to the specific project." Real parties filed a conforming application following their pre-approval meeting with city planners and interested parties.

There is no reason or evidence in this record to warrant a conclusion the project description provided in the application was in any way deficient for its intended purpose. It addresses each of the areas required by section 31.10 and includes project drawings, site photographs and a geotechnical report. Appellants, in their corrected opening brief, cite to their argument before the Board of Supervisors as evidence that the project description is deficient. They also rely on a statement by a planning commissioner that there are no detailed plans showing the renovations to be made to the existing cottage. Neither reference is to evidence in the record that tends to show the project description is legally or factually deficient.

d. The Unusual Circumstances Exception

Once a project is determined to qualify for a categorical exemption from CEQA, "a party challenging the exemption has the burden of producing evidence supporting an exception." (*Berkeley Hillside, supra,* 60 Cal.4th at p. 1105.) An exception arises when a project may have a significant environmental effect due to unusual circumstances. The CEQA guidelines provide that: "A categorical exemption shall not be used for an activity

8

where there is a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances." (Cal. Code Regs., tit. 14, § 15300.2, subdivision (c).) We review an agency decision rejecting this unusual circumstances exception under both prongs of the familiar abuse of discretion standard. The decision that no unusual circumstances exist to trigger the exception is reviewed for substantial evidence. "[A]fter resolving all evidentiary conflicts in the agency's favor and indulging all reasonable inferences to uphold the agency's finding, [we] must affirm that finding if there is any substantial evidence, contradicted or uncontradicted, to support it." (*Berkeley Hillside, supra,* 60 Cal.4th at p. 1114.) But if an agency was wrong to conclude a project presents no unusual circumstances, in order to determine whether the agency proceeded in a manner required by law, we consider whether a "fair argument" may be made that there is a reasonable possibility the proposed project will have a significant effect on the environment. (*Id.* at p. 1115.) If the agency was presented with a "fair argument" that the project possibly has a significant effect on the environment, the agency is required to assess the project under CEQA to determine whether an EIR is required, even though it may also be presented with other substantial evidence that the project will not have a significant effect. (*Id*. at pp. 1111–1112, 1122.)

Appellant argues that the unusual circumstances exception applies in this case because the project is on Telegraph Hill. It calls the location and site constraints "unequivocally rare," and says the exception applies because it is the "*first* among the 'Outstanding and *Unique* Areas' that 'contribute in an extraordinary degree to San Francisco's visual form and character." The remainder of its argument is devoted to showing possible environmental effects of the project because it is located at a sensitive intersection, has a significant impact on public views and its unusual topography presents geotechnical impacts. But the City's conclusion that the proposed project presents no unusual circumstances was supported by substantial evidence.

The record shows that the City considered Telegraph Hill's stature in the Urban Design Element of the General Plan:

"TELEGRAPH HILL

9

A hilltop park with the highly visible green of trees from which Coit Tower rises above all else.

Low, small-scale buildings having predominantly flat roofs and light pastel colors, hugging the topography in a highly articulated form which contrasts with the power of downtown construction.

Cliffs and complex stairs and walkways on the east side above the waterfront, with buildings perched precariously along the slope and trees interspersed.
Intimate pedestrian scale and texture of streets and housing, with sudden and dramatic views of the Bay and downtown through narrow openings."

The City rejected the notion that the designation of Telegraph Hill in the urban design element supports a claim of unusual circumstances, and so do we. The full description of the Hill in the element shows that it is lined with low, small-scale buildings with flat roofs that hug the topography. While one may argue the scale of the proposed building, this seems a question of degree rather than an unusual circumstance. This is especially true because the evidence shows the project is in an RH-3 residential zone. As the City Planning Code describes an RH-3 residential zone, "[t]he predominant form is large flats rather than apartments, with lots 25 feet wide, a fine or moderate scale and separate entrances for each unit. Building styles tend to be varied but complementary to one another. Outdoor space is available at ground level, and also on decks and balconies for individual units." (S. F. Planning Code, § 209.1) Moreover, the project is within the density, height and bulk limitations for its designated zoning. It will also be immediately adjacent to a four unit building of similar proportion. It would be odd at best for us to conclude a development project that conforms with zoning requirements on Telegraph Hill is in and of itself an unusual circumstance that requires CEQA review. We decline to do so.

Appellant seems to argue that the intersection where the project is located, its effect on views, and its topography are evidence of its significant environmental effects. We will also address whether any of these considerations present unusual circumstances. In San Francisco, they do not.

10

The City agrees with appellant that "the intersection adjacent to the project site experiences a number of vehicle, transit, and pedestrian trips primarily due to daytime tourists travelling to San Francisco's Coit Tower/Pioneer Park." But the City points out that many roadways and sidewalks in the city are heavily travelled. In context, the City considers the site more commonplace than unusual. The City also considered the proposed driveway in context, as "all driveways in the City cross the pedestrian path of travel." Moreover, the city concluded that "the project's proposal for a three vehicle parking garage would result in a low volume of vehicles entering and exiting from Telegraph Hill Boulevard."

Appellant argues that the project will impair a view of the downtown skyline from the landing on stairs leading to Pioneer Park. There are two reasons why any impairment of the views from this landing is not an unusual circumstance that should trigger the exception. First of all, effective January 1, 2014, section 21099 subdivision (d) provides that aesthetic impacts of certain residential urban infill projects within a transit priority area "shall not be considered significant impacts on the environment." The Planning Department determined the project meets the definition of "an infill site within a transit priority area." Appellant makes no claim that section 21099 does not apply to the project. Thus, any impact on the city views caused by the project is not a significant environmental impact under CEQA.

The Planning Commission also concluded based on evidence that the project will not obstruct views from Pioneer Park and Coit Tower. "The Project will not adversely affect any public parks or open spaces. It is located below Coit Tower and Pioneer Park on Telegraph Hill, and will incorporate green rooftops to ensure that the Project blends with the hillside when viewed from above. It will not adversely affect Coit Tower's access to sunlight or public vistas." The project is consistent with, and just a bit shorter, than an adjacent building. Its three foot setbacks between structures and a five foot setback on the west side of the project were considered consistent with the Urban Design Element for Telegraph Hill in the general plan as an area with " 'initimate pedestrian scale and texture of streets and housing with sudden and dramatic views of the Bay and

11

downtown through narrow openings.' "  In fact, the evidence shows the project's rooftops are a bit more than 46 feet below the public viewing terrace of Pioneer Park.  The project will change the view from stairs leading to Pioneer Park, but it will not obstruct views from the park's viewing areas.

Finally, the conclusion that the site's topography and geology presented no unusual circumstances is supported by substantial evidence.  The department observed that the slope of the project lot (approximately 30%) is not unusual for San Francisco, and was a condition that would be addressed in the permit review process by the Department of Building Inspection.  That process would address potential settlement and subsidence impacts of excavation and dewatering of the site, and possibly require ongoing monitoring of surrounding buildings and streets for lateral movement or settlement during the construction process.

The report of the engineers consulted for the project reflects that test borings to bedrock were done at four locations on the property, and concludes, " On the basis of our site reconnaissance and data review, we conclude that the site is suitable for support of the proposed improvements.  The primary geotechnical concerns are founding improvements in competent earth materials, excavation of bedrock, support of temporary slopes and adjacent improvements, and seismic shaking and related effects during earthquakes."  There is a low risk at the project site for liquefaction, surface rupture, lateral spreading, densification and landslides.

The engineers assumed the planned improvements will be constructed at or below existing site grades, and the report reflects more concern over possibly raising of grades on the site rather than excavation.  "Raising site grades on the sloping portions of the site is discouraged.  If site grades are raised by filling more than about l foot, we should be retained to calculate the impact of filling on slope stability, site settlements, and foundations."   No similar concerns are expressed concerning excavations.  In fact, it appears from the report that customary measures should be adequate to address anticipated risks that arise during project excavation.  The report addresses the possible need to underpin adjacent structures and recognizes that safe excavation may require

12

temporary slopes or shoring in accord with OSHA standards.

The report provided by an engineer retained by appellant is critical of the project engineers. He says that the discussion of lateral and subjacent support was inadequate for the site in light of the excavation required to construct the project. He also criticizes the report for a failure to discuss or investigate the condition of bedrock on adjacent property, notably underneath Telegraph Hill Boulevard and the hillside across the street from the project. But, when we review an agency determination that a project presents no unusual circumstances for projects within an exempt class, "after resolving all evidentiary conflicts in the agency's favor and indulging in all legitimate and reasonable inferences to uphold the agency's finding, [we] must affirm that finding if there is any substantial evidence, contradicted or uncontradicted to support it." (*Berkeley Hillside, supra,* 60 Cal.4th at p. 1114.)

The proposed project's exemption from CEQA is supported by substantial evidence, and so is the determination that it presents no unusual circumstances to require an exception.

3. *The Conditional Use Authorization.*

Appellant says the finding in the conditional use approval that the project is consistent with the Planning Code and will not adversely affect the general plan is unsupported by the evidence because the views from the stairway leading to Pioneer Park will be obscured by the project. Appellant says in light of the evidence, this finding conflicts with Priority Policy 8 of San Francisco's general plan, which states: "That our parks and open space and their access to sunlight and vistas be protected from development." (S.F. Planning Code, § 101.1, subd. (b) (8).)

But the directives contained in the priority policies of San Francisco's general plan are not strictly construed and their application necessarily involves a weighing and balancing of interests. (*San Francisco Tomorrow v. City and County of San Francisco*, *supra*, 229 Cal.App.4th at p. 520.) Here, there is evidence the project meets other priorities of the general plan, the project is located below Coit Tower and Pioneer Park, and the project design was modified slightly to enhance a view corridor between the

13

proposed buildings.  Moreover, the project appears consistent with the Urban Design Element for Telegraph Hill that describes "texture of streets and housing, with sudden and dramatic views of the Bay and downtown through narrow openings."

The conditional use approval was not an abuse of discretion.

## CONCLUSION

We agree with appellant that Telegraph Hill is outstanding and unique in a city of outstanding and unique places.  We agree too, with appellant and the expression in the Urban Design Element that such places ought to be protected from "inconsistent new development that might upset their unique character."  But the City here has made a determination based upon the evidence that the proposed project conforms with the General Plan, the Urban Design Element and the general nature of development on Telegraph Hill in a way that does not change its character.  On this record, we cannot disagree.

"[T]here was a time when Telegraph Hill was topped with scrub eucalyptus trees and goat trails.  There was no Coit Memorial Tower then; there were no paved roads, no well-trimmed shrubbery, and no artists' studios with wide glass windows—studios renting for two hundred dollars a month.  No, in those days Telegraph Hill was a rough place, beautiful in its raggle-taggle, topsy-turvy madness.  The shacks that were called houses leaned at crazy angles and teetered on the edge of cliffs like small boys climbing fences and shouting, 'Watch me fall off!' . . . [¶] But, then as now when the hill has become a dignified dowager with important apartments replacing the shacks, you could stand up there at night, and the full beauty of the city was spread at your feet."  (Dickson, Samuel, *Tales of San Francisco,* Stanford University Press, 1957, p. 243.)  That will not change because of this project.

## DISPOSITION

The denial of the petition for writ of mandamus is affirmed.  The petition for writ of supersedeas filed August 18, 2017, is denied.

14

_____
Siggins, J.

We concur:


_____
McGuiness, P.J.


_____
Pollak, J.


*Protect Telegraph Hill v. SF*, A148544


15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PROTECT TELEGRAPH HILL,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>    Defendant and Respondent;<br><br>JEREMY RICKS et al.,<br><br>    Real Parties in Interest. | A148544<br><br>(City & County of San Francisco Super. Ct. No. CPF-14-514060)<br><br>**ORDER CERTIFYING OPINION FOR PUBLICATION** |

**BY THE COURT:**

The opinion filed in the above-entitled matter on September 14, 2017, was not certified for publication in the Official Reports. For good cause, the requests for publication filed September 21, 25, and 28, 2017 are granted.

Pursuant to rule 8.1105(b) of the California Rules of Court, the opinion in the above-entitled matter is ordered certified for publication in the Official Reports.

DATE:  OCT 13, 2017                              McGuiness, P.J.                P.J.

16

Trial Court:                                   San Francisco City and County Superior
                                               Court


Trial Judge:                                   Honorable Teri L. Jackson


Counsel:

Brandt-Hawley Law Group, Susan Brandt-Hawley for plaintiff and appellant.

Office of the City Attorney, Dennis J. Herrera, City Attorney, Andrea Ruiz-Esquide,
Victoria Wong, Deputy City Attorneys for defendants and respondents.

Reuben, Junius & Rose, Daniel Frattin, James Reuben; Burke,Williams, & Sorenson,
Anna C. Shimko, Gail E. Kavanagh for Real Parties in Interest.