Filed 9/28/21; Certified for publication 10/26/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PROTECT TUSTIN RANCH, | |
| Plaintiff and Appellant, | G059709 |
| v. | (Super. Ct. No. 30-2019-01113056) |
| CITY OF TUSTIN et al., | O P I N I O N |
| Defendants and Respondents; | |
| COSTCO WHOLESALE CORPORATION, | |
| Real Party in Interest and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Randall J. Sherman, Judge. Affirmed.

Finney Arnold, Tal C. Finney, Shaune B. Arnold; R. Bruce Tepper and R. Bruce Tepper for Plaintiff and Appellant.

Woodruff, Spradlin & Smart, and Ricia R. Hager for Defendants and Respondents.

Armbruster Goldsmith & Delvac, and Damon P. Mamalakis for Real Party in Interest and Respondent.

*       *       *

This case involves the proposed construction of a new gas station and ancillary facilities (project) in an existing shopping center surrounded by commercial and residential uses. Respondent City of Tustin (City) reviewed the project pursuant to the California Environmental Quality Act, Public Resources Code section 21000 et seq. (CEQA),[1] and concluded the project was exempt from CEQA under the categorical exemption for "in-fill development" (Cal. Code Regs., tit. 14, § 15332; infill exemption). After the City approved the project and filed a notice of exemption, appellant Protect Tustin Ranch (Protect) sought a writ of mandate to set aside the City's approvals due to what it claimed was an erroneous finding by the City that the project was exempt from CEQA. The trial court denied Protect's petition.

Protect contends the trial court should have issued a writ of mandate because the administrative record evidences the project site is too large for the project to qualify for the infill exemption and there were "unusual circumstances" which precluded the City from relying on the exemption. We find no error and affirm the judgment.

FACTS

Real Party in Interest Costco Wholesale Corporation (Costco) wants to build a gas station next to an existing Costco warehouse located in an area of the City known as Tustin Ranch. The project site is within an already built shopping center located along a major commercial thoroughfare. It is adjacent to the Tustin Auto Center and the Tustin Marketplace, a large retail center, as well as some residential neighborhoods. Other existing buildings in the shopping center include a McDonald's

_____

[1] All statutory references are to the Public Resources Code unless otherwise specified.

2

restaurant, a vacant major retail store, a Goodyear Tire Center and two multi-tenant buildings.

The project has two components: (1) construction of a 16-pump (32-fuel position) gas station with a canopy, related equipment and landscaping; and (2) demolition of an existing Goodyear Tire Center and adjacent surface parking, all to be replaced with 56 new surface parking stalls. The gas station portion of the project will replace a portion of an existing surface parking lot.

Costco applied to the City for a conditional use permit (CUP) and design review approval. Its original development application included, among other information, the address of the project, the present and proposed uses, the existing and proposed building sizes, and the "[l]ot [s]ize"—listed by Costco as 11.97 acres. Likewise, the original environmental assessment form submitted by Costco listed the "[s]ite size" as 11.97 acres.

With City staff believing the project was exempt from review under CEQA, the City planning commission held a public hearing concerning the CUP and considered adopting a notice of exemption for the project. Regarding CEQA, the City staff report stated the following: "This project is Categorically Exempt from further environmental review pursuant to the CEQA Class 32, 'In- Fill Development Projects' in that the project is consistent with the City's General Plan and [the East Tustin Specific Plan] and occurs within city limits on a project site of no more than five (5) acres substantially surrounded by urban uses. The project site has no value as habitat for endangered, rare, or threatened species. The project can be adequately served by all required utilities and public services. Approval of the project would not result in any significant effects relating to traffic, noise, air quality, or water quality." It thereafter included a paragraph addressing each of the latter subjects.

3

After receiving public comments, the planning commission chose to continue the public hearing so City staff could address concerns raised by the public and planning commission questions.

Ultimately, the planning commission approved the project, adopting a resolution which found the project categorically exempt from environmental review under CEQA pursuant to CEQA Guidelines section 15332 (Class 32, In-Fill Development Projects) (infill exemption).[2]

Members of the public appealed the planning commission's decision to the city council which considered the matter anew. The City staff report presented to the city council included a more detailed analysis of the CEQA infill exemption the planning commission had found applicable. With respect to the size of the project site, it stated, in relevant part: "The project site (consisting of the area where the fueling station and landscape screening will be constructed and the area where the existing Goodyear Tire Center building will be demolished and restriped with surface parking) has a total area of approximately 2.38 acres. No new development or construction activity related to the proposed project will occur in the other portions of the shopping center, including the existing Costco Warehouse, former K-mart/Ansar Gallery retail space, and other pad parcels, nor will the existing operations at these uses change as a result of the proposed project." The staff report also addressed potential exceptions to the exemption, concluding none of the exceptions applied.

After receiving public comments, the city council adopted a resolution finding the project categorically exempt from CEQA review under the infill exemption, with no applicable exceptions, and granting the requested approvals. In doing so, it expressly found the project did not present any unusual circumstances as compared to other projects that would qualify for the infill exemption. The City filed a notice of

_____

[2] All references to the "CEQA Guidelines" are to the state regulations which implement the provisions of CEQA. (Cal. Code Regs., tit. 14, § 15000 et seq.)

4

exemption pursuant to CEQA. An attachment to the notice of exemption explained the reasons for the exemption, with the explanation being the same as was provided in the city council staff report and city council resolution concerning the project.

Protect filed a petition for writ of mandate against the City, the city council and the planning commission, challenging the City's finding that the project was exempt from CEQA review, among other matters. In its briefing prior to the hearing on the petition, Protect argued one of the criteria for the claimed infill exemption—that the project site be no more than five acres in size—was not met because documents described the project site as occupying nearly 12 acres. It also asserted the City erroneously relied on the exemption because the project fell within the scope of the "unusual circumstances" exception set forth in CEQA Guidelines section 15300.2, subdivision (c).

The trial court heard the matter, rejected Protect's arguments and denied the writ petition. It entered judgment accordingly.

Protect timely appealed.

DISCUSSION

Protect contends the trial court's conclusion was error for two reasons.[3] First, it argues the project does not qualify for the infill exemption claimed by the City because the project is too large. Second, it asserts the City improperly relied on the exemption because the project falls within the scope of the "unusual circumstances" exception. We find no error.

---

[3]     For the first time in its reply brief, Protect also argues the City's traffic technical analysis was not supported by substantial evidence. "'Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant.'" (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)

*CEQA and general standard of review*

"CEQA is a comprehensive scheme designed to provide long-term protection to the environment." (*Mountain Lion Foundation v. Fish & Game Com.* (1997) 16 Cal.4th 105, 112.) It applies to "discretionary projects proposed to be carried out or approved by public agencies." (§ 21080, subd. (a).) "In enacting CEQA, the Legislature declared its intention that all public agencies responsible for regulating activities affecting the environment give prime consideration to preventing environmental damage when carrying out their duties. [Citations.] CEQA is to be interpreted 'to afford the fullest possible protection to the environment within the reasonable scope of the statutory language.'" (*Mountain Lion Foundation*, at p. 112.)

There are three fundamental steps in the CEQA review process. "'The first step is jurisdictional and requires a public agency to determine whether a proposed activity is a "project." . . . If a proposed activity is a project, the agency proceeds to the second step of the CEQA process. [¶] At the second step, the agency must "decide whether the project is exempt from the CEQA review process under either a statutory exemption [citation] or a categorical exemption set forth in the . . . [CEQA] Guidelines [citations]." . . . [¶] Unlike statutory [exemptions], categorical exemptions are subject to exceptions. . . . [¶] If a project is categorically exempt and does not fall within an exception, "'it is not subject to CEQA requirements and "may be implemented without any CEQA compliance whatsoever."'"'" (*Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 409 (*Holden*).) The third step is reached if a project is not exempt or if an exemption may not be relied on due to an applicable exception. (See *ibid*.) Under such circumstances, the agency must decide whether the project may have a significant effect on the environment. Depending on the answer to that question, the agency then prepares a negative declaration, a mitigated negative declaration or an environmental

impact report.  (See § 21080, subds. (c) & (d); *Citizens for Responsible & Open Government v. City of Grand Terrace* (2008) 160 Cal.App.4th 1323, 1331-1332.)

"[In] an appeal challenging a trial court's denial of a petition for a writ of mandate in a CEQA case, our task is the same as the trial court's.  [Citation.]  We conduct our review of the agency's action independently of the trial court's findings.  [Citation.]  Accordingly, in this appeal we review [the] City's decision and not the trial court's."  (*Holden, supra*, 43 Cal.App.5th at p. 409.)

*Class 32 infill exemption*

The City concluded the project was categorically exempt from CEQA under the infill exemption set forth in CEQA Guidelines section 15332.  In order for a project to qualify for the infill exemption, five criteria must be met:  "(a) [t]he project [must be] consistent with the applicable general plan designation and all applicable general plan policies as well as with applicable zoning designation and regulations[;] [¶] (b) [t]he proposed development occurs within city limits on a project site of no more than five acres substantially surrounded by urban uses[;]  [¶] (c) [t]he project site has no value, as habitat for endangered, rare or threatened species[;]  [¶] (d) [a]pproval of the project [must] not result in any significant effects relating to traffic, noise, air quality, or water quality[; and] [¶] (e) [t]he site [must be able to] be adequately served by all required utilities and public services."  (CEQA Guidelines, § 15332.)

Protect challenges the City's determination concerning only one of the five criteria for the exemption—the size of the project site.  It claims the project site is not less than five acres.

"A public agency's 'determination that [a particular] project [is] exempt from compliance with CEQA requirements . . . is subject to judicial review under the abuse of discretion standard in . . . section 21168.5.  [Citations.] . . . Abuse of discretion is established if the agency has not proceeded in a manner required by law or if the

7

determination or decision is not supported by substantial evidence.'" (*Holden, supra*, 43 Cal.App.5th at p. 410.)

"[W]here[, as here,] a public agency makes a factual determination that a project falls within a . . . categorical exemption, we apply the substantial evidence standard in reviewing the agency's finding." (*Holden, supra*, 43 Cal.App.5th at p. 410.) We do not weigh conflicting evidence, as that is the role of the public agency. (See *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 576 (*Western States*).) Rather, we review the administrative record to see if it contains evidence of ponderable legal significance that is reasonable in nature, credible, and of solid value, to support the agency's decision. (*Holden, supra*, at p. 410.)

Here, the administrative record contains substantial evidence indicating the project site is less than five acres in size. Multiple documents confirm the size of the project site is approximately 2.38 acres. A revised development application form submitted by Costco specifies: "Area of work—2.38 Acres inclusive of new gas station and parking at demolished Goodyear site area." Identical language appears in a revised environmental assessment form completed by Costco. Technical documents, including a water quality management plan, also refer to a 2.38 acre area as that which will be disturbed as part of the project. And maps, along with City staff comments during the city council's consideration of the matter, clarify the total project site acreage was calculated by adding together the acreage of the project's two components—1.74 acres where the gas station and ancillary facilities will be built, and 0.64 acres which will include demolition of the existing Goodyear Tire Center and development of the new surface parking spaces.

Protect notes original planning and environmental assessment documents prepared by Costco "described the [p]roject size as 12 acres." Although it appears some initial documents specified a "site size" of almost 12 acres, the City and Costco representatives explained the discrepancy. The total size of the existing shopping center

8

is approximately 12 acres, but only 2.38 acres is being altered by the project. "No new development or construction activity related to the proposed project will occur in the other portions of the shopping center . . . ."

In sum, substantial evidence supports the City's factual determination concerning the project site size. Because that is the only infill exemption criteria challenged by Protect, it has failed to show the City abused its discretion in concluding the project fell within the scope of the exemption.

*Unusual circumstances exception*

Protect contends it was improper for the City to rely on the infill exemption because the "unusual circumstances" exception applies. The City disagrees, arguing Protect has not met its burden of demonstrating the exception applies under the circumstances. We agree with the City.

CEQA Guidelines section 15300.2, subdivision (c), provides: "Significant Effect. A categorical exemption shall not be used for an activity where there is a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances."

The Supreme Court clarified the meaning of the language, the relative burdens and the applicable standards of review in *Berkeley Hillside Preservation v. City of Berkeley* (2015) 60 Cal.4th 1086 (*Berkeley Hillside*). "As to projects that meet the requirements of a categorical exemption, a party challenging the exemption has the burden of producing evidence supporting an exception." (*Id.* at p. 1105.) For the unusual circumstances exception, this may be done in one of two ways. One may identify "evidence that the project *will* have a significant effect on the environment." (*Ibid.*) Alternatively, one may show evidence (1) the project is unusual because it "has some feature that distinguishes it from others in the exempt class, such as its size or location";

9

and (2) there is "a reasonable possibility of a significant effect due to that unusual circumstance." (*Ibid*.)

A couple of different standards of review are applied to an agency's determination the unusual circumstances exception is inapplicable, both of which stem from section 21168.5. (*Berkeley Hillside, supra*, 60 Cal.4th at p. 1114.)

"Whether a particular project presents circumstances that are unusual for projects in an exempt class is an essentially factual inquiry, "'founded 'on the application of the fact-finding tribunal's experience with the mainsprings of human conduct.'"" [Citation.] Accordingly, as to this question, the agency serves as 'the finder of fact' [citation], and a reviewing court should apply the traditional substantial evidence standard . . . . [A]fter resolving all evidentiary conflicts in the agency's favor and indulging in all legitimate and reasonable inferences to uphold the agency's finding, [the court] must affirm [the agency's] finding if there is any substantial evidence, contradicted or uncontradicted, to support it." (*Berkeley Hillside, supra*, 60 Cal.4th at p. 1114.)

"As to whether there is 'a reasonable possibility' that an unusual circumstance will produce 'a significant effect on the environment' [citation], a different approach is appropriate, both by the agency making the determination and by reviewing courts." (*Berkeley Hillside, supra*, 60 Cal.4th at p. 1115.) The agency applies a fair argument standard, meaning it reviews the evidence to see if there is a fair argument of a reasonable possibility the project will have a significant effect on the environment. (*Ibid*.) If there is substantial evidence of a reasonable possibility the project will have such an effect, the agency may not rely on the exemption even if there is evidence to the contrary. (*Id*. at p. 1112.)

A reviewing court "'determine[s] whether substantial evidence support[s] the agency's conclusion as to whether the prescribed "fair argument" could be made.'" (*Berkeley Hillside, supra*, 60 Cal.4th at p. 1115.) If it "'"perceives substantial evidence"'" that there is a reasonable possibility the project will have a significant environmental impact, but the agency relied on the exemption, "'"the agency's action is to be set aside because the agency abused its discretion by failing to proceeding "in a manner required by law.""'" (*Id*. at p. 1112; see *Protect Telegraph Hill v. City and County of San Francisco* (2017) 16 Cal.App.5th 261, 270.)

Because Protect does not argue there is evidence the project *will* have a significant effect on the environment, we focus on the two-prong test prescribed in *Berkeley Hillside*.

Protect claims "unusual circumstances apply to the [p]roject due to: (i) the former operations of the Goodyear Service Center wherein tires were installed and oil and other fluid changes were performed; (ii) the unusually large configuration of the Costco gasoline fueling station with 32 individual fueling pumps; and (iii) the planned use of retractable bollards and additional Costco employees to re-route [t]raffic during peak usage." But it does not explain why these features distinguish the project from others that would qualify for the infill exemption, and it does not cite any evidence from the record demonstrating a distinction. As the party challenging the City's reliance on the infill exemption, Protect bears the burden of producing evidence to support the claimed exception. (*Berkeley Hillside, supra*, 60 Cal.4th at p. 1105; *Citizens for Environmental Responsibility v. State ex. rel. 14th Dist. Ag. Assn.* (2015) 242 Cal.App.4th 555, 578 (*Citizens*).) And, as appellant, it bears the burden of providing reasoned argument, supported by citation to the law and facts in evidence, demonstrating trial court error. (*Holden, supra*, 43 Cal.App.5th at p. 418; *Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 555.) It has not met those burdens.

11

Assuming arguendo Protect articulated and supported an argument of unusual circumstances, substantial evidence supports the City's conclusion the project is not unusual in relation to other infill development which would qualify for the exemption. As for the size of the project, although the proposed gas station will have 16 pumps (32 fuel positions), evidence in the record shows that size is not remarkably different than other Costco gas stations in California. Further, the infill exemption is not limited to gas stations. Many types of development may qualify so long as the other criteria are met, including the size limitation of less than five acres. Because the infill exemption is expressly limited to projects under a certain size, it's questionable whether the size of a project can be a characteristic that makes an otherwise exempt project unusual.

"Courts may also look to conditions in the immediate vicinity of a proposed project to determine whether a circumstance is unusual. [Citation.] This includes whether the project is consistent with the surrounding zoning and land uses." (*Citizens, supra*, 242 Cal.App.4th at p. 586.) As part of the exemption determination, the City concluded the project was consistent with the City's general plan, the applicable specific plan, the applicable zoning designation, and development and design standards. Protect does not challenge that conclusion. Additionally, the record shows the project is within an existing shopping center, located "along a major commercial thoroughfare," and adjacent to the Tustin Marketplace, an expansive retail center, and the Tustin Auto Center. Substantial evidence in the record shows the proposed gas station is in line with the characteristics of the surrounding setting.

Protect's true concern appears to be what might be uncovered if the City were to engage in further environmental review. It asserts "[c]ommon sense" necessitates looking further at what it characterizes as potential soil contamination.[4]

---

[4] After appellate briefing was complete, Protect filed a request for judicial notice of certain letters and reports related to the Goodyear Tire Center site. At oral

12

Additionally, it claims there is "a fair argument of the inference of [project] [s]ite contamination."

But unsupported concerns, presumptions or conjectures are not enough to force the City to proceed further down the CEQA road. A categorically exempt project, by definition, is deemed by law to not have a potentially significant impact on the environment unless the project's administrative record sufficiently demonstrates applicability of an exception to the claimed exemption. (*Berkeley Hillside, supra*, 60 Cal.4th at pp. 1104-1105; *World Business Academy v. State Lands Com.* (2018) 24 Cal.App.5th 476, 491.) And in a situation such as this, where the claimed exception is the "unusual circumstances" exception, one does not reach the question of whether there is a fair argument of a reasonable possibility of a significant environmental effect unless there is an adequate showing of an unusual circumstance. (*Walters v. City of Redondo Beach* (2016) 1 Cal.App.5th 809, 822, fn. 5; *Citizens, supra*, 242 Cal.App.4th at p. 588, fn. 24; see *Berkeley Hillside, supra*, 60 Cal.4th at p. 1105 ["it is not enough for a challenger merely to provide substantial evidence that the project *may* have a significant effect on the environment, because that is the inquiry CEQA requires absent an exemption"].) Protect has not made that showing.

_____

argument, it requested we remand the case to allow the trial court to consider the additional documents. We deny the requests. First, we do not consider matters raised for the first time at oral argument without proper presentation and due notice to the other parties. (See *Burchett v. City of Newport Beach* (1995) 33 Cal.App.4th 1472, 1483.) Second, the documents post-date the City's consideration and approval of the project. As the Supreme Court has made clear, except in unusual circumstances not applicable here, extra-record evidence which comes into existence after an agency's final CEQA determination on a project may not be considered by the courts. (*Western States, supra*, 9 Cal.4th at pp. 573-574, 578; see *El Morro Community Assn. v. California Dept. of Parks & Recreation* (2004) 122 Cal.App.4th 1341, 1359 [rejecting request to add post agency decision document to administrative record]; *Fort Mojave Indian Tribe v. California Department of Health Services* (1995) 38 Cal.App.4th 1574, 1597 [same].)

13

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to costs on appeal.




MARKS, J.*

WE CONCUR:


BEDSWORTH, ACTING P. J.


FYBEL, J.

*Judge of the Orange Super. Ct., assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 10/26/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PROTECT TUSTIN RANCH,<br><br>  Plaintiff and Appellant,<br><br>     v.<br><br>CITY OF TUSTIN et al.,<br><br>  Defendants and Respondents;<br><br>COSTCO WHOLESALE CORPORATION,<br><br>  Real Party in Interest and Respondent. | G059709<br><br>(Super. Ct. No. 30-2019-01113056)<br><br>O R D E R |

Cox, Castle & Nicholson, LLP, Manatt, Phelps & Phillips, LLP, and Best Best & Krieger LLP have requested that our opinion filed on September 28, 2021, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The requests are GRANTED.

The opinion is ordered published in the Official Reports.

MARKS, J.*

WE CONCUR:


BEDSWORTH, ACTING P. J.


FYBEL, J.

*Judge of the Orange Super. Ct., assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.