Filed 12/30/25

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

|  |  |
|---|---|
| JOE KROVOZA et al., | C100103 |
| Plaintiffs and Appellants, | (Super. Ct. No. CV20221741) |
| v. | |
| CITY OF DAVIS et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Yolo County, Timothy L. Fall, Judge.  Affirmed.

Law Office of Donald B. Mooney and Donald B. Mooney for Plaintiffs and Appellants.

Inder Khalsa, City Attorney; Richards, Watson & Gershon and Thomas Peter Pierce for Defendants and Respondents.

The California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.)[1] requires public agencies to consider the environmental consequences of the discretionary projects they propose to carry out or approve. (*Stockton Citizens for Sensible Planning v. City of Stockton* (2010) 48 Cal.4th 481, 488.) For policy reasons, the Legislature and the Secretary of the Natural Resources Agency (Secretary)—through a directive from the Legislature in section 21084, subdivision (a)—have exempted several categories of projects from review under CEQA. (*Berkeley Hillside Preservation v. City of Berkeley* (2015) 60 Cal.4th 1086, 1092 (*Berkeley Hillside*); see *Muzzy Ranch Co. v. Solano County Airport Land Use Com.* (2007) 41 Cal.4th 372, 380-381 (*Muzzy Ranch Co.*) [if a project is exempt from CEQA, no further environmental review is necessary; the public agency need only prepare and file a notice of exemption].)

When a project falls within a categorical exemption—i.e., a class of projects determined by the Secretary to generally not have a significant effect on the environment—exceptions may apply. (*Berkeley Hillside*, *supra*, 60 Cal.4th at p. 1126 ["The Guidelines anticipate the overinclusivity of categorical exemptions and address the problem by establishing a list of exceptions"].) One such exception, the unusual circumstances exception, is the subject of this appeal.

Joe and Janet Krovoza (collectively, the Krovozas) appeal from the trial court's denial of their verified petition for writ of mandate (petition), in which the Krovozas challenged the City of Davis's (City) filing of a notice of exemption for the relocation of playground equipment within a park (project). The Krovozas argue the project is subject to the unusual circumstances exception, which, as set forth in the Guidelines for Implementation of CEQA (Guidelines; Cal. Code Regs., tit. 14, § 15000 et seq.), precludes a public agency from relying on a categorical exemption if "there is a

---

[1] Undesignated statutory references are to the Public Resources Code.

reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances." (Guidelines, § 15300.2, subd. (c).)

There are two alternative tests to establish the unusual circumstances exception. Under the first test, the person challenging the exemption must establish *with evidence* that the project *will* have a significant effect on the environment. (*Berkeley Hillside*, *supra*, 60 Cal.4th at p. 1105.) Under the second test, the person challenging the exemption must show (1) "the project has some feature that distinguishes it from others in the exempt class, such as its size or location"; and (2) there is "a reasonable possibility of a significant effect [on the environment] due to that unusual circumstance." (*Ibid.*)

The Krovozas argue the project meets the unusual circumstances exception under both tests. They assert the first test is met because the results of the City's noise expert's study show the project will result in sound exceeding the noise limits in the City's ordinance. In the alternative, the Krovozas argue the second test is met because the City impliedly found or substantial evidence demonstrates the project is different from other categories of projects in the exempt classes upon which the City relies, and substantial evidence supports a fair argument that the project may have a substantial impact on the environment due to noise. Finding no merit in these contentions, we affirm.

BACKGROUND

In May 2019, the City installed the Sky Track playground equipment at Arroyo Park. The Sky Track imitates the sense of flight and "consists of a swing and a separate seat that are suspended on parallel tracks and riders are pushed from end to end on the track." The Sky Track appears to be akin to a zip line.

Following the Sky Track's installation, the City received noise complaints that were "directly attributed to the moving/mechanical nature of the equipment and the close proximity of the equipment in its particular location to nearby homes." In July 2019, the City retained Bollard Acoustical Consultants, Inc. (Bollard) to conduct a noise study at the existing location of the Sky Track. Bollard evaluated the noise generated by the Sky

3

Track and compared those noise levels against the standards in the City's noise ordinance at the nearest residences. Bollard took short-term noise level measurements at three locations. Two of those locations were at residences to the south of the Sky Track. The hourly average noise levels were measured at 46, 44, and 46 decibels, respectively. The City explained that, based on Bollard's interpretation of the ordinance and the noise measurements, Bollard concluded the noise generated by the Sky Track was under the noise threshold in the ordinance during the day but exceeded the noise threshold at night. Bollard recommended that the City implement additional measures to address the nighttime noise.

The City addressed the nighttime noise concerns by: (1) placing signage at the park and posting notice on social media that the Sky Track was open for use between 8:00 a.m. and sunset daily; (2) installing additional rubber bumpers at both ends to better absorb noise from the track; and (3) assigning staff to unlock the Sky Track at 8:00 a.m. each morning and lock it each evening at sunset using chains and locks. Although locking the Sky Track reduced nighttime noise impacts, it presented other challenges. The lock mechanisms were vandalized or tampered with at least 12 times and the timeliness of locking and unlocking the equipment proved challenging due to staff turnover and the Sky Track's distance from the pool complex where staff performed their primary duties. Due to these recurring issues, the City explored relocating the Sky Track to another area within the park.

The City retained Acoustics Group, Inc. (Acoustics) to assist in the relocation evaluation. On December 2, 2021, Acoustics conducted a site visit to assess "the noise from the Sky Track in its current location in order to obtain baseline data" and conduct modeling of noise levels at four alternative locations within the park. Acoustics took three short-term measurements to document noise levels produced by the Sky Track at its existing location. Those measurements were taken roughly in the same three locations as the Bollard study. The average existing Sky Track noise levels at the three locations

4

ranged from 45.1 to 55.5, 45.3 to 54.0, and 53.5 to 62.1 decibels, respectively. From the study, Acoustics concluded the noise levels associated with the *existing* operation of the Sky Track exceeded both the City's day and night noise ordinance standards under certain circumstances. In response to the study, the City closed the Sky Track operation until the playground equipment could be relocated to a more suitable site.

Acoustics's analysis of the anticipated noise levels associated with relocation of the Sky Track revealed that only three locations (referred to as Locations A, B, and C) would meet the City's day and night noise level standards at the nearest residential boundaries. The City's staff recommended relocation of the Sky Track to Location B, which is "near the center of the park, just east of the aquatics center," for several reasons. In its analysis of the anticipated noise level impacts as to relocation of the Sky Track to Location B, Acoustics identified the existing Sky Track noise level impacts at the three short-term noise level measurement locations as 57.2, 55.5, and 66.3 decibels, respectively, and the predicted operating noise levels at those same locations following relocation of the Sky Track to Location B as 49.2, 47.7, and 54.3 decibels, respectively. In a chart, Acoustics explained that 40 to 50 decibels is generally equated with a refrigerator humming, 50 to 60 decibels is generally equated with a quiet office environment, and 60 to 70 decibels is generally equated with normal conversation.

The City's staff noted Acoustics recommended that if the Sky Track is relocated to Location B, "the unit should be placed in a west to east orientation instead of the current north to south orientation which will further reduce the noise heard from the nearby properties." The staff report further states: "Staff may still determine that the Sky Track should be locked at night in the new location to reduce after hours use if such use becomes a nuisance. Staff recommends assessing the need to lock the equipment once relocation is completed. If locking in the new location is determined appropriate, staff working at the park would be in much closer proximity to the equipment and monitoring could be readily achieved."

5

On August 30, 2022, the City's City Council approved the relocation of the Sky Track to Location B. The City filed a notice of exemption, which exempted the project from CEQA under three categorical exemptions: Class 3, pertaining to the new construction, installation, or conversion of a limited number of small structures, facilities, or equipment; Class 4, pertaining to minor alterations to land, water, or vegetation; and Class 11, pertaining to the construction or placement of accessory structures. (Guidelines, §§ 15303, 15304, 15311.) The Krovozas challenged the notice of exemption via a petition.

The trial court denied the petition, finding substantial evidence supported the City's findings that the project fell within the scope of the categorical exemptions identified and that no unusual circumstances existed. The trial court found the Krovozas failed to carry their burden of establishing the unusual circumstances exception because substantial evidence showed the noise level impacts associated with the Sky Track at the new location would be reduced in comparison to the noise level impacts from the Sky Track at its existing location. The trial court further found that the City provided substantial evidence to support its finding that no unusual circumstances existed and, accordingly, did not consider whether there was a fair argument of a reasonable probability of a significant effect on the environment due to unusual circumstances. The Krovozas filed a timely notice of appeal in December 2023. Their opening brief was filed in April 2025, and this case was fully briefed on July 14, 2025.

DISCUSSION[2]

The Krovozas assert the evidence establishes the unusual circumstances exception is met under either of the two tests articulated by our Supreme Court. First, they assert the project will have a significant effect on the environment because the evidence shows

_____

[2] We note the Krovozas have raised no argument pertaining to the baseline at issue for the CEQA analysis.

6

the project will exceed the noise level standards in the City's noise ordinance. In that regard, the Krovozas argue the violation of an ordinance is substantial evidence of a significant noise impact, the City's noise study shows the project will exceed the noise levels in the ordinance (if we were to agree with their asserted noise measurement standard), and the City relied on a flawed interpretation of its noise ordinance to conclude its noise studies did not reveal a violation of the ordinance. We need not address the evidentiary basis for the Krovozas's challenge because we conclude evidence that the project would violate a standard in the City's noise ordinance standing alone (assuming but not deciding one could be proven) does not constitute substantial evidence that the project *will* have a significant effect on the environment. We thus do not address the remainder of the Krovozas's argument as to the first test.

Next, the Krovozas argue the second test is satisfied because (1) the City impliedly found that the project has a feature distinguishing it from others in the exempt class or, alternatively, there is substantial evidence in the record supporting such a finding; and (2) substantial evidence supports a fair argument of a reasonable probability that the project may have a significant noise impact. As to the fair argument factor in this test, the Krovozas argue the City prejudicially abused its discretion by failing to evaluate whether the project (1) would lead to a substantial increase in ambient noise levels and (2) violates section 24.02.020(c) of the City's noise ordinance in its municipal code. We conclude the City did not prejudicially abuse its discretion as asserted. We further conclude the record does not support a fair argument of a reasonable possibility that the project may have a significant noise impact.

I

*Legal Background*

CEQA "establishes a comprehensive scheme to provide long-term protection to the environment. It prescribes review procedures a public agency must follow before approving or carrying out certain projects." (*Berkeley Hillside*, *supra*, 60 Cal.4th at

7

p. 1092.)  The process consists of three tiers.  In the first tier, an agency conducts a preliminary review to determine whether an activity is a project.  (*Muzzy Ranch Co.*, *supra*, 41 Cal.4th at p. 380.)  If the activity does not constitute a "project" as defined under CEQA and the Guidelines, the activity is not subject to CEQA.  (*Ibid.*)  If the activity is a project, the agency moves to the second tier.

"The second tier concerns exemptions from CEQA review.  The Legislature has provided that certain projects, such as ministerial projects and repairs to public service facilities of an emergency nature, are exempt.  [Citations.]  In addition, pursuant to the Legislature's command [citation], the . . . Guidelines list categorical exemptions or 'classes of projects' that the resources agency has determined to be exempt per se because they do not have a significant effect on the environment.  [Citations.]

"[¶] . . . [¶]

"If a public agency properly finds that a project is exempt from CEQA, no further environmental review is necessary.  [Citation.]  The agency need only prepare and file a notice of exemption [citations], citing the relevant statute or section of the CEQA Guidelines and including a brief statement of reasons to support the finding of exemption [citation].  If a project does not fall within an exemption, the agency must 'conduct an initial study to determine if the project may have a significant effect on the environment.' [Citation.]  If there exists 'no substantial evidence that the project or any of its aspects may cause a significant effect on the environment' [citation], the agency must prepare a 'negative declaration' that briefly describes the reasons supporting its determination [citation].

"CEQA's third tier applies if the agency determines substantial evidence exists that an aspect of the project may cause a significant effect on the environment.  In that event, the agency must ensure that a full environmental impact report is prepared on the proposed project." (*Muzzy Ranch Co.*, *supra*, 41 Cal.4th at pp. 380-381.)

8

This appeal pertains to a categorical exemption determination in the second tier. The categorical exemptions adopted in the Guidelines are subject to exceptions. (*North Coast Rivers Alliance v. Westlands Water Dist.* (2014) 227 Cal.App.4th 832, 850-851 (*North Coast*).) One such exception is the unusual circumstances exception, which provides "[a] categorical exemption shall not be used for an activity where there is a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances." (Guidelines, § 15300.2, subd. (c).) "[A]n agency may not apply a categorical exemption without considering evidence in its files of potentially significant effects, regardless of whether that evidence comes from its own investigation, the proponent's submissions, a project opponent, or some other source." (*Berkeley Hillside*, *supra*, 60 Cal.4th at p. 1103.)

The "party challenging the exemption has the burden of producing evidence supporting an exception." (*Berkeley Hillside*, *supra*, 60 Cal.4th at p. 1105.) The unusual circumstances exception may be established by: (1) showing *with evidence* that the project *will* have a significant effect on the environment; or (2) showing "the project has some feature that distinguishes it from others in the exempt class, such as its size or location" and there is "a reasonable possibility of a significant effect [on the environment] due to that unusual circumstance." (*Ibid.*)

Under both tests, the phrase " 'significant effect on the environment' " means "a substantial, or potentially substantial, *adverse change* in the environment." (§ 21068, italics added; *Lewis v. Seventeenth Dist. Agriculture Assn.* (1985) 165 Cal.App.3d 823, 829.) The Guidelines further define that phrase, in pertinent part, as "a substantial, or potentially substantial, *adverse change* in any of the physical conditions within the area affected by the project including land, air, water, minerals, flora, fauna, ambient noise, and objects of historic or aesthetic significance." (Guidelines, § 15382, italics added.)

9

II

*Violation of the City's Noise Ordinance Standard Alone Does Not Constitute Substantial Evidence That a Project Will Have a Significant Environmental Effect*

The City asserts a project's violation of its noise ordinance standing alone cannot constitute substantial evidence that the project *will* have a significant noise impact, relying on *Lighthouse Field Beach Rescue v. City of Santa Cruz* (2005) 131 Cal.App.4th 1170 (*Lighthouse Field Beach Rescue*), *Bowman v. City of Berkeley* (2004) 122 Cal.App.4th 572, and *South of Market Community Action Network v. City and County of San Francisco* (2019) 33 Cal.App.5th 321, and distinguishing *Walters v. City of Redondo Beach* (2016) 1 Cal.App.5th 809 (*Walters*).  The Krovozas disagree, arguing *Lighthouse* and *Bowman* are factually distinguishable, and citing *Walters* and two questions in the sample initial study checklist provided in Appendix G to the Guidelines[3] to support their position that failure to comply with the standards in the noise ordinance constitutes a significant environmental impact.

We agree the cases upon which the City relies are distinguishable because the cases pertain to CEQA analyses conducted *after* the agencies had found no exemption applied and conducted an initial study.  (*Lighthouse Field Beach Rescue*, *supra*, 131 Cal.App.4th at pp. 1206-1207 [discussing an inconsistency between the project and other land uses in a revised general plan and how such inconsistency is merely a factor in considering whether the project may cause a significant environmental effect when using the sample initial study checklist provided in Appendix G to the Guidelines, which is only suggested]; *Bowman v. City of Berkeley*, *supra*, 122 Cal.App.4th at pp. 575-576, 577-578 [upholding a mitigated negative declaration based on an initial study that concluded the project would have no aesthetic impacts even though the project exceeded

---

[3] See Guidelines, § 15063, subd. (f) ["forms are only suggested"; "public agencies are free to devise their own format for an initial study"].

10

limitations in the zoning ordinance as to height, parking, lot coverage, and setbacks];

*South of Market Community Action Network v. City and County of San Francisco*, *supra*, 33 Cal.App.5th at pp. 350-351 [upholding an environmental impact report over a challenge regarding shade and shadow impacts because, among other things, a provision in the planning code and general plan discouraging the creation of new shadows on parks was a policy restriction and the agency's action in raising the limit for a project did not establish a CEQA violation].)

We nonetheless agree with the City that the violation of a standard in its noise ordinance alone (assuming but not deciding one could be proven here) does not constitute substantial evidence that the project *will* have a significant effect on the environment.

The City's ordinance establishes noise limits and, as pertinent here, provides that "[n]o person shall produce, suffer or allow to be produced on any public or private property, sounds at a level in excess of those enumerated in Table 1, when measured at its property plane or, if on any street or highway measured at the property plane of the nearest property." (Davis Mun. Code, § 24.02.020, subd. (a).) Table No. 1 provides the maximum noise level for residential land use is 50 decibels in evening and morning hours from 9:00 p.m. to 7:00 a.m. and 55 decibels in day hours from 7:00 a.m. to 9:00 p.m. (Davis Mun. Code, § 24.02.020, Table No. 1.) The term "Noise level" is defined as "the maximum continuous sound level or repetitive peak level produced by a sound source or group of sources" when measured as prescribed. (Davis Mun. Code, § 24.01.020.)

The ordinance also provides a maximum noise limit, as follows: "No person shall produce, suffer or allow to be produced in any location a noise level of more than twenty [decibels] above the limit, but not greater than eighty [decibels], on Table No. 1 measured at the property plane. This section constitutes an absolute noise limitation applicable notwithstanding any other provision of this chapter, or any exception, exemption or waiver provided therefrom, except that the provisions of this section shall not apply to those activities referred to in Section 24.02.040[, subdivisions] (a) through

11

(d) or to emergencies." (Davis Mun. Code, § 24.02.030.) Section 24.02.040, subdivisions (a) through (d) contain special provisions pertaining to power tools, construction and landscape maintenance equipment, air conditioners and similar equipment, and work required for public health and safety. (Davis Mun. Code, § 24.02.040.)

The Krovozas argue the City's noise experts used an incorrect noise measurement standard to evaluate the project's compliance with the ordinance. They assert that if we agree with their claim that a different noise measurement standard not identified in the ordinance "is a closer approximation of 'maximum continuous sound level' and 'repetitive peak level,' " then we should conclude the noise data in one of the tables in Acoustics's noise study shows the project will exceed the noise levels in the ordinance. We decline to address the argument because the Krovozas have not shown that a violation of the City's noise ordinance constitutes evidence that the project will have a significant effect on the environment.

To establish the project will have a significant effect on the environment, the Krovozas " 'must provide or identify substantial evidence indicating (1) the project will actually have an effect on the environment and (2) that effect will be significant.' " (*Walters*, *supra*, 1 Cal.App.5th at p. 823.) The project's "effect" must be an "adverse change in the environment." (§ 21068.) Thus, the exception does not apply if the project causes no change from existing baseline physical conditions (*North Coast*, *supra*, 227 Cal.App.4th at p. 872) or if the change in the environment is not adverse (*Campbell v. Third Dist. Agriculture Assn.* (1987) 195 Cal.App.3d 115, 118). The term "environment" means "the physical conditions which exist within the area which will be affected by a proposed project, including land, air, water, minerals, flora, fauna, noise, objects of historic or aesthetic significance." (§ 21060.5; see also Guidelines, § 15360 ["environment" defined].)

"In determining whether there is a potential for . . . an adverse change in the

12

environment, the 'baseline' environmental conditions against which a project is to be compared are the physical conditions existing at the time the agency makes its CEQA determination and/or approves the project." (*North Coast*, *supra*, 227 Cal.App.4th at p. 872.) In other words, to determine a project's effect on the environment, "a public agency must first make a fair assessment of existing physical conditions (i.e., baseline physical conditions) and then compare it to the anticipated or expected physical conditions were the project to be completed, thereby allowing the agency to focus on the nature and degree of changes expected in those physical conditions after the project and whether those changes result in any significant effect on the existing environment." (*Taxpayers for Accountable School Bond Spending v. San Diego Unified School Dist.* (2013) 215 Cal.App.4th 1013, 1037.)

To establish the project will have a significant noise impact on the environment, the Krovozas had to show that relocating the Sky Track would cause an adverse change in noise levels compared to existing physical baseline conditions. Assuming without deciding that the Krovozas can prove the project exceeds the standards in the noise ordinance, such a violation alone says *nothing* about the baseline conditions against which the project must be compared. It neither establishes that there will be a change in the baseline conditions nor that any such change will be adverse. Accordingly, merely showing that the project will exceed a standard in the City's noise ordinance cannot as a matter of law establish that the project *will* have a significant effect on the environment. And, as explained *post*, the evidence shows that noise impacts will *decrease* following relocation of the Sky Track.

Neither *Walters* nor the questions in the checklist in Appendix G of the Guidelines mandate a different conclusion. In *Walters*, the city conditioned the approval of a car wash on compliance with local noise standards. (*Walters*, *supra*, 1 Cal.App.5th at pp. 823-824.) The appellate court found that the condition and other assurances would ensure compliance with the noise standards and thus the appellants failed to meet "their

13

burden of showing that the noise generated by the project actually will have a significant environmental effect." (*Id*. at p. 824.) The case did not address the question before us— i.e., whether exceeding the City's local noise standard alone is substantial evidence that the project will have a significant environmental impact. Cases are not authority for propositions not considered. (*Id*. at p. 822.) Use of the initial study checklist in Appendix G is further only suggested, and the checklist is used only *after* an agency determines that the project is not exempt from CEQA. (*Lighthouse Field Beach Rescue*, *supra*, 131 Cal.App.4th at p. 1206.) The checklist is thus inapplicable to the exemption determination.

Because any violation of the standards in the City's noise ordinance does not establish that the project will have an adverse change in the environment, the project's violation of the ordinance alone, without more, does not constitute substantial evidence that the project will have a significant impact on the environment.

III

*There Is No Substantial Evidence to Support a Fair Argument of a Reasonable Probability the Project May Have a Significant Environmental Impact*

The Krovozas argue the first prong of the second test to establish the existence of unusual circumstances is met because either the City impliedly found that the project was different from other categories of projects in the exemption classes (relying on *Respect Life South San Francisco v. City of South San Francisco* (2017) 15 Cal.App.5th 449) or, in the alternative, there is substantial evidence in the record to support such a finding. The Krovozas further argue the second prong of the test—the fair argument requirement—is established by: (1) public comments and the City's noise studies; (2) the City's failure to conduct an ambient noise level study prior to approving the project; and (3) the City's failure to evaluate whether the project violates section 24.02.020(c) of the City's noise ordinance in its municipal code.

14

The City disagrees that it impliedly found the existence of an unusual circumstance pertaining to the Sky Track and argues there is no substantial evidence in the record to support such a finding in any event. The City further argues the Krovozas cannot show any fair argument of a reasonable possibility of a significant effect on the environment.

We do not address the Krovozas's arguments that the Sky Track constitutes an unusual circumstance because we conclude there is no substantial evidence to support a fair argument of a reasonable possibility that the purported unusual circumstance[4] may have a significant effect on the environment. Our finding in that regard is fatal to establishing the unusual circumstances exception.

To determine whether there is " 'a reasonable possibility' " that an unusual circumstance may produce " 'a significant effect on the environment,' " our "function 'is to determine whether substantial evidence support[s] the agency's conclusion as to whether the prescribed "fair argument" could be made' " that the project may have a significant effect on the environment. (*Berkeley Hillside*, *supra*, 60 Cal.4th at p. 1115.) Substantial evidence includes "fact, a reasonable assumption predicated upon fact, or expert opinion supported by fact." (§ 21080, subd. (e)(1); see also Guidelines, § 15384, subd. (a).) Although substantial evidence may include relevant personal observations of area residents on nontechnical subjects, argument, speculation, unsubstantiated opinions, concerns, and suspicions about a project do not rise to the level of substantial evidence necessary to support a fair argument that there is a reasonable possibility a project may have a significant effect on the environment. (See *Hilltop Group, Inc. v. County of San Diego* (2024) 99 Cal.App.5th 890, 919; § 21080, subd. (e)(2) [substantial evidence does not include "[a]rgument, speculation, unsubstantiated opinion or narrative, evidence that

---

[4] The Krovozas appear to suggest the unusual circumstance is the moving mechanical parts of the playground equipment.

15

is clearly inaccurate or erroneous, or evidence of social or economic impacts that do not contribute to, or are not caused by, physical impacts on the environment"]; see also Guidelines, § 15384, subd. (a).)

The Guidelines define substantial evidence as "enough relevant information and reasonable inferences from this information that a fair argument can be made to support a conclusion, even though other conclusions might also be reached." (Guidelines, § 15384, subd. (a).) In other words, "[s]ubstantial evidence is evidence of ponderable legal significance that is reasonable in nature, credible, and of solid value." (*Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 410.) This standard requires the court to resolve "all conflicts in the evidence . . . in favor of the prevailing party and all legitimate and reasonable inferences are made to support the [public] agency's decision." (*Ibid.*)

"[I]n the absence of a specific factual foundation in the record, dire predictions by nonexperts *regarding the consequences of a project* do not constitute substantial evidence." (*Gentry v. City of Murrieta* (1995) 36 Cal.App.4th 1369, 1417, italics added.) To meet the fair argument standard, "project opponents must produce some evidence, other than their unsubstantiated opinions, that a project will produce a particular adverse effect." (*Association for Protection etc. Values v. City of Ukiah* (1991) 2 Cal.App.4th 720, 735-736 (*Association for Protection*).) Here, the record contains no factual foundation supporting the proposition that it is reasonably possible the project may create a significant increase in noise when the Sky Track is placed in its new location.

The public comments upon which the Krovozas rely pertain to complaints about noise from use of the Sky Track at its *existing* location—i.e., the physical baseline against which the project must be measured—and speculative comments that the project may have adverse noise impacts at the new location. Most of the Krovozas's citations are to communications between them and the City regarding past noise impacts from use of the Sky Track *in 2019*. The Krovozas's other citations are to: (1) a City employee's presentation before the City Council and her statement regarding the additional measures

16

that were recommended to address nighttime noise issues at the existing location; (2) a comment by an unknown individual regarding noise impacts from the Sky Track at its existing location; (3) a comment by the City Attorney to the City Council that it would be unusual to conduct additional environmental review of a facility of the Sky Track's size; and (4) a comment from a member of the public stating that although he had "not had a chance to use or hear this particular piece of equipment," a grating noise is annoying and harmful.

None of the foregoing comments constitutes substantial evidence that the Sky Track will increase noise levels above the baseline levels at the *new* location. (§ 21080, subd. (e)(2) [substantial evidence does not include speculation].) Accordingly, the Krovozas have not produced any evidence, other than unsubstantiated opinions, that the project will produce a particular adverse effect. (*Association for Protection*, *supra*, 2 Cal.App.4th at pp. 735-736.) They have thus not shown with substantial evidence that a fair argument can be made.

Contrary to the Krovozas's assertion, the City's noise studies do not constitute substantial evidence of a fair argument that the project may have a significant effect on the environment. The Acoustics study shows that the relocation of the Sky Track to Location B will result in *lower* noise levels at the three locations where measurements were taken. Indeed, Acoustics identified the existing Sky Track noise level impacts at the three short-term noise level measurement locations as 57.2, 55.5, and 66.3 decibels, respectively, and the predicted operating noise levels at those same locations following relocation of the Sky Track to Location B as 49.2, 47.7, and 54.3 decibels, respectively. The reduction in noise levels does not demonstrate an *adverse* change in the environment. (See *Campbell v. Third Dist. Agriculture Assn.*, *supra*, 195 Cal.App.3d at p. 118 [unusual circumstances exception did not apply to improvements made to decibel levels because they "were designed to reduce racing noise to more reasonable levels"].)

The Krovozas's attempt to manufacture an argument that the Acoustics study

17

shows the ambient noise level *could* increase as much as 12 decibels is unsubstantiated. They ask us to assume distances between the locations considered for relocation and certain residences are the same and to speculate the ambient noise level "in the approximate location of the nearest residence to the south of Location B" is the same as for "the residences nearest to Location B to the north." Our function is to determine whether there is substantial evidence in the record supporting a fair argument that the project may have a significant effect on the environment. Our function is *not* to create evidence or infer findings from evidence where there is no basis for doing so. (§ 21080, subd. (e)(2) [substantial evidence is not speculation or unsubstantiated opinion or narrative].) Because the Krovozas have identified no evidence in the record demonstrating there is a reasonable probability that the project may increase noise levels for adjoining areas at the *new* location, they have failed to meet the fair argument prong of the unusual circumstances test. (*Association for Protection*, *supra*, 2 Cal.App.4th at pp. 735-736 ["project opponents must produce some evidence, other than their unsubstantiated opinions, that a project will produce a particular adverse effect"].)

We also find no merit in the Krovozas's argument that the City prejudicially abused its discretion by failing to evaluate whether the project would lead to a substantial increase in ambient noise levels prior to approving the project. They rely on a colloquy between a department of recreation and park commissioner and one of the City's experts, during which the expert explained that a person's perception of noise depends on the relative ambient background noise. They further rely on prior complaints by residents regarding noise emanating from the Sky Track at its existing location during nighttime hours and recorded nighttime violations.

The City asserts the Krovozas failed to exhaust their administrative remedies in challenging the lack of an ambient noise level analysis and, in the alternative, the argument lacks merit because the project is exempt and not subject to the CEQA noise analysis requirements. The Krovozas retort the argument is not forfeited because

18

someone (i.e., the department of recreation and park commissioner) raised the issue in the administrative proceedings, the argument was raised with sufficient particularity to apprise the City of the claimed deficiency, and the City invited the procedural shortcoming because of the "11th hour disclosure of its intent to rely on the CEQA exemptions."[5]  We need not delve into whether the Krovozas exhausted their administrative remedies because, even assuming without deciding that they did, we conclude the City did not prejudicially abuse its discretion.  The Krovozas's argument rests on a conflation of the different levels of analysis required under CEQA.

The Krovozas cite three cases for the proposition that an agency must "consider the existing ambient noise environment" to determine whether the project will "result in a substantial increase in ambient noise levels" prior to exempting the project from CEQA. None of those cases stands for such a proposition because each involved the CEQA analysis required *after* the public agency found that the project was not exempt.  (*Keep Our Mountains Quiet v. County of Santa Clara* (2015) 236 Cal.App.4th 714, 719, 730, 732-733 ["lead agency should consider both the increase in noise level and the absolute noise level associated with a project" in its analysis of *the initial study*, citing Appendix G of the Guidelines, to determine if a mitigated negative declaration was appropriate]; *Berkeley Keep Jets Over the Bay Com. v. Board of Port Cmrs.* (2001) 91 Cal.App.4th 1344, 1380-1381 [whether residential uses are compatible with a noise level of 65 decibels for land use planning purposes "is not determinative in setting a threshold of significance" for an environmental impact report]; *King & Gardiner Farms, LLC v. County of Kern* (2020) 45 Cal.App.5th 814, 829-830 [invalidated an environmental

---

[5]  As to the Krovozas's attempt to attack the City's process in making the exemption determination, we note an agency need not provide the public with an opportunity to review or comment on the exemption, and it need not hold a hearing on its exemption determination.  (*Robinson v. City and County of San Francisco* (2012) 208 Cal.App.4th 950, 963-964 & fn. 8.)

impact report for failure to analyze "why the magnitude of an increase in ambient noise need not be addressed to determine the significance of the project's noise impact" with substantial evidence].)

It is a fundamental concept that "CEQA does not apply to exemption decisions. By definition, a 'project falling within . . . a categorical exemption is not subject to CEQA.' [Citation.] For that reason, compliance with the act is not required. 'Where a project is categorically exempt, it is not subject to CEQA requirements and "may be implemented without any CEQA compliance whatsoever." ' [Citations.] 'Once this determination of threshold exemption is made, . . . none of the CEQA requirements or procedures apply.' " (*San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.* (2006) 139 Cal.App.4th 1356, 1386.) Accordingly, a public agency need not conduct an initial study or any specific studies to determine whether a project is categorically exempt from CEQA review, as to either the regulatory exemptions or the regulatory exceptions to the exemptions. (*Apartment Assn. of Greater Los Angeles v. City of Los Angeles* (2001) 90 Cal.App.4th 1162, 1172-1173.) The Krovozas thus cannot establish that the City prejudicially abused its discretion by failing to proceed in the manner required by law. (*Association for Protection*, *supra*, 2 Cal.App.4th at pp. 727-728 [courts review decisions made pursuant to CEQA for substantial evidence or to determine " 'whether the agency making the decision abused its discretion by failing to proceed in the manner required by law' "].) The City was not required by law to conduct an ambient noise study.

In their reply brief, the Krovozas argue the cases upon which they rely are pertinent to the exemption analysis "because how noise analyses are required to be conducted under CEQA is directly relevant to questions surrounding the unusual circumstances and cumulative impact exceptions, because they necessarily raise issues about significance determinations and the fair argument standard, neither of which would normally come up in the CEQA exemption context." Again, the cases upon which the

Krovozas rely do not support their position. That *Walters* cited to *Parker Shattuck Neighbors v. Berkeley City Council* (2013) 222 Cal.App.4th 768, a mitigated negative declaration case, in analyzing whether a project would have a significant effect on traffic impacts, does not equate to a finding that CEQA analyses required *after* a finding that a project is not exempt must be done *before* finding that a project is not exempt. (*Walters*, *supra*, 1 Cal.App.5th at p. 825.) The *Walters* court indicated no such rule of law. Likewise, the fact that our Supreme Court in *Berkeley Hillside* relied on two cases in the CEQA analysis context to "illustrate how the fair argument standard applies under the unusual circumstances test," as the Krovozas assert, does not create a rule of law not considered by the court. (*Berkeley Hillside*, *supra*, 60 Cal.4th at pp. 1110-1112.)

The Krovozas appear to further argue that, because the City conducted two noise studies, it was required to conduct an ambient noise analysis as part of the noise studies. But, an agency's decision to proceed with some level of CEQA analysis does not bar the agency from asserting in litigation that the action is exempt; it can defend a challenge to the adequacy of the document on the basis that the action was exempt and thus the CEQA review was not required to begin with. (See *Rominger v. County of Colusa* (2014) 229 Cal.App.4th 690, 700, overruled in part on other grounds in *Union of Medical Marijuana Patients, Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1194.) The Krovozas have identified no legal requirement that the City had to conduct an ambient noise study prior to approving the exempt project. The City thus did not abuse its discretion by failing to proceed in a manner required by law.

Finally, we find no merit in the Krovozas's argument that the City was required to evaluate whether the project violates section 24.02.020(c) of the City's noise ordinance in its municipal code prior to approving the project. That provision in the ordinance states, in pertinent part: "Notwithstanding any other provision of this section, no person shall produce, suffer or allow to be produced any sound on any private or public property, which is audible to a person within any dwelling unit of a . . . residentially zoned

21

property, . . . unless the permission, either written or verbal, of the occupants of all affected dwelling units has been obtained.

"During the hours of 9:00 a.m. through 10:00 p.m., Sunday through Thursday, and 9:00 a.m. and 12:30 a.m. the following day, Friday and Saturday, such permission shall be presumed to be granted by occupants of all affected dwelling units; provided that any affected person may withdraw such consent at any time. Such withdrawal of consent may be accomplished by either verbal or written request to the person causing, or allowing, such sound to be made, or by making such request to the city police department who shall then notify the person causing, or allowing, such sound to be made." (Davis Mun. Code, § 24.02.020.)

The Krovozas argue that they formally withdrew their consent to hear audible sound in their home from the Sky Track in 2021, and the noise studies show that the Sky Track noise will be at levels that "will easily be heard in their home and constitute a clear violation of the Noise Ordinance."

The City argues the Krovozas forfeited the argument because they failed to raise it in the trial court. The City explains that the Krovozas argued the noise studies conducted outside the residential properties revealed sounds in excess of the noise ordinance, but they "did not complain of any lack of testing inside of residences." The City further notes that there is no evidence in the record that the Sky Track "at its proposed *new* home at Location B—would generate noise that could be heard inside of residences." The Krovozas reply that they did not forfeit the argument because the City was fully apprised of the fact that they withdrew their consent to hear audible sound inside their home.

As stated *ante*, any purported violation of the noise ordinance does not by itself constitute substantial evidence that the project will result in an adverse change in the environment. Here, the Krovozas have identified no substantial evidence that the Sky Track would generate noise that would be heard inside their home. The noise studies merely analyzed noise levels *outside* of certain residences. And, the Krovozas have

identified no legal requirement for the City to evaluate compliance with section 24.02.020(c) of the City's noise ordinance in its municipal code prior to approving the project. Thus, even if the Krovozas did not forfeit the contention, there is no basis for finding the City prejudicially abused its discretion by failing to proceed in a manner required by law.

Because the Krovozas have failed to demonstrate substantial evidence supports a finding of a fair argument of a reasonable possibility that the project may have a significant effect on the environment, we affirm.

DISPOSITION

The judgment is affirmed. The City shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1)-(2).)


/s/
BOULWARE EURIE, J.


We concur:


/s/
MAURO, Acting P. J.


/s/
MESIWALA, J.

23